Calvin R. Jones
Jones & Colver, LLC
1900 West Benson Blvd., Suite 201
Anchorage Alaska 99517
(907) 272-6511

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| MORGAN STANLEY DW INC., a Delaware corporation<br><br>Plaintiff,<br><br>vs.<br><br>TY A. SCHOMMER, LYNN ANTHONY SOISETH, SCOTT DAVID INGRIM, AND JAMES VINCENT O'REILLY,<br><br>Defendant[s]. | No.  A06-<br><br>**MEMORANDUM IN SUPPORT OF MORGAN STANLEY'S MOTION FOR A TEMPORARY RESTRAINING ORDER** |

I.   **INTRODUCTION**

This motion is made by Morgan Stanley DW Inc. ("Morgan Stanley"), against former Morgan Stanley Financial Advisors, Ty Schommer ("Schommer"), Lynn Soiseth ("Soiseth"), J. Vincent O' Reilly ("O'Reilly") and Scott Ingrim ("Ingrim"), who have misappropriated Morgan Stanley's confidential customer information and used it to solicit Morgan Stanley accounts, to try and divert these Morgan Stanley accounts, commission revenues and assets to a direct competitor of Morgan Stanley, A.G. Edwards & Sons, Inc. ("AGE") in Anchorage, Alaska.  In doing so, Schommer, Soiseth, O'Reilly, and Ingrim (collectively referred to hereinafter as the "Defendants") have violated the express terms of their employment contracts and associated agreements with Morgan Stanley, breached their fiduciary duties to Morgan Stanley, converted Morgan Stanley's property to their own use, tortiously interfered with Morgan Stanley's relationships with Morgan Stanley's customers, and violated the laws of unfair competition.

- 1

Jones & Colver, LLC.
Attorneys at Law
1900 West Benson Blvd., Suite 201
Anchorage, Alaska 99517
Telephone:  (907) 272-6511
Fax: (907) 276-6511

7146-3 pjb

To maintain the status quo and prevent irreparable harm pending the outcome of the Defendants' arbitration, before the National Association of Securities Dealers (NASD"), Morgan Stanley asks that injunctive relief be granted precluding the Defendants, and all those acting in concert or participation with them, including but not limited to AGE, from using such confidential information or further interfering with Morgan Stanley's relationships with its customers, and compelling the immediate return of all documents and records concerning the business and affairs of Morgan Stanley.

## II.   FACTUAL BACKGROUND[1]

### A.   <u>Defendants' Misappropriation of Morgan Stanley's Confidential Customer Lists and Solicitation of Morgan Stanley Customers.</u>

The Defendants were employed as Financial Advisors in Morgan Stanley's Anchorage, Alaska office. On or about November 14, 1994, Morgan Stanley hired Schommer. As a condition of employment, Schommer executed a written employment agreement, an Account Executive Trainee Employment Agreement. (Attached as Exhibit "A" to Pierce Affidavit) . On or about January 15, 1988, Morgan Stanley hired Soiseth. As a condition of employment, Soiseth executed a written employment agreement, an Account Executive Trainee Employment Agreement. (Attached as Exhibit "B" to Pierce Affidavit). On or about February 26, 1988, Morgan Stanley hired O'Reilly. As a condition of employment, O'Reilly executed a written employment agreement, an Account Executive Employment Agreement. (Attached as Exhibit "C" to Pierce Affidavit). On or about October 23, 2000, Morgan Stanley hired Ingrim. As a condition of employment, Ingrim executed a written employment agreement, a Financial Advisor Trainee Employment

---

[1] The accompanying Affidavit of Harold Pierce ("Pierce Affidavit"), Branch Haymans ("Haymans Affidavit"), Clark Rush, Laura Godenci, Patrick Davis and Steve McSharry, together with the Complaint set forth the facts of this case in detail.

- 2

Jones & Colver, LLC.
Attorneys at Law
1900 West Benson Blvd., Suite 201
Anchorage, Alaska 99517
Telephone: (907) 272-6511
Fax: (907) 276-6511

7146-3 pjb

Agreement. (Attached as Exhibit "D" to Pierce Affidavit). The Account Executive Employment Agreements will be referred to hereafter as the "Employment Agreements." [2]

True and correct copies of the Employment Agreements are attached as Exhibits "A" through "D" to the Pierce Affidavit. Section 1 of those agreements requires the Defendants to keep Morgan Stanley's records confidential. Section 2 of those agreements prohibits the Defendants from soliciting Morgan Stanley clients. Section 3 of their Employment Agreements, the Defendants expressly consented to the entry of injunctive relief against them should they violate the terms of the Employment Agreements.

Morgan Stanley provided the Defendants with training, paid for their annual registration fees with the New York Stock Exchange, National Association of Securities Dealers, American Stock Exchange, and various other state securities commissions. Morgan Stanley also compensated the Defendants throughout their employment with the firm and provided them with employment-related benefits, systems, sales support, and other opportunities. (Pierce Affidavit, paragraph 7)

The Defendants acquired much of the book of business they maintained while employed at Morgan Stanley through account distributions by Morgan Stanley. These accounts were originally maintained by other Morgan Stanley financial advisors who left Morgan Stanley for various reasons. These accounts were not accounts prospected by the Defendants, but were firm accounts. As part of the assignment, the Defendants Schommer, Soiseth, O'Reilly, and Ingrim signed agreements in which they promised that if they ever were to leave, they would not compete for the business of those accounts and would keep all information pertaining to those accounts confidential. (Copies of the Account Distribution

---

[2] The Employment Agreements contain provisions that prohibit the Defendants from misappropriating Morgan Stanley confidential information while allowing Morgan Stanley the remedy of injunctive relief.

- 3

Jones & Colver, LLC.
Attorneys at Law
1900 West Benson Blvd., Suite 201
Anchorage, Alaska 99517
Telephone: (907) 272-6511
Fax: (907) 276-6511

7146-3 pjb

Acknowledgments ("Distribution Agreements") are attached as Exhibit "E" through "H" to the Pierce Affidavit).

On the eve of May 25, 2006, without notice, and one day prior to Memorial Day weekend, the defendants submitted letters of resignation to the Morgan Stanley Anchorage branch office. The remaining Defendants' letters of resignation stated that they were each leaving Morgan Stanley to assume comparable positions at the AGE branch office in Anchorage, Alaska. (Pierce Affidavit, paragraph 11)

The Defendants managed Morgan Stanley accounts valued at approximately $295 million generating annual revenues of over $1.8 million. Morgan Stanley has learned that the Defendants have illegally solicited Morgan Stanley clients, which they serviced while Morgan Stanley employed them. (*See* Affidavits of Pierce, Haymans, Davis and McSharry). As a result of the Defendants' illegal solicitation, Morgan Stanley expects many of its clients to transfer their assets. Some Morgan Stanley customers have already indicated that they plan to transfer their accounts to AGE.

Upon information and belief, Defendants:

(1) Removed and still retain confidential records of Morgan Stanley, including the names, addresses and phone numbers of Morgan Stanley account.

(2) disclosed and produced these confidential records and information to AGE; and

(3) began using, and continue to use, the confidential customer information contained in Morgan Stanley's records to solicit Morgan Stanley customers.

The Defendants have contacted Morgan Stanley customers whose accounts they had been servicing before their resignations. Morgan Stanley customers have received letters and phone calls from Defendants urging them to transfer their accounts to AGE. The facts demonstrate that Defendants carefully planned to violate their Agreements with Morgan

Jones & Colver, LLC.
Attorneys at Law
1900 West Benson Blvd., Suite 201
Anchorage, Alaska 99517
Telephone: (907) 272-6511
Fax: (907) 276-6511

7146-3 pjb

Stanley by pirating away Morgan Stanley customers to AGE. (Affidavits of Pierce, Rush, McSharry, Davids, Haymans and Godenzi.

### B. Defendants' Breaches of Contract with Morgan Stanley.

By their conduct, the Defendants not only committed the torts of conversion, unfair competition, and breach of fiduciary duty, but also misappropriated Morgan Stanley's confidential and proprietary customer list and have breached the express terms of the Employment Agreements signed as a condition of employment with Morgan Stanley. Additionally, Defendants Schommer, Soiseth, O'Reilly, and Ingrim have breached the express terms of the Distribution Agreements they signed as a condition of the transfer of the subject customer accounts to their books of business.

The Defendants signed Employment Agreements (See Exs. "A" through "D" to Pierce Affidavit), which confirmed the confidentiality of Morgan Stanley's records and prohibited the defendants from communicating to third parties the contents of any records belonging to Morgan Stanley and from soliciting customers they serviced while at Morgan Stanley for at least 90 days, and for up to one year, following termination of their employment with Morgan Stanley.

Defendants Schommer, Soiseth, O'Reilly, and Ingrim also signed the Distribution Agreement (See Exs. "E" through "H" to the Pierce Affidavit), which confirmed the confidentiality of Morgan Stanley's records and prohibited communicating to third parties the contents of any records belonging to Morgan Stanley and from soliciting customers they serviced, or whose names they learned, at Morgan Stanley. For Schommer and Ingrim, the prohibition lasts for one (1) year from the date of termination and within a one-hundred (100) mile radius. For Soiseth and O'Reilly, the prohibition lasts for ninety (90) days from the date of termination and within a twenty-five (25) mile radius.

Jones & Colver, LLC.
Attorneys at Law
1900 West Benson Blvd., Suite 201
Anchorage, Alaska 99517
Telephone: (907) 272-6511
Fax: (907) 276-6511

7146-3 pjb

In consideration of the above described covenants, Morgan Stanley agreed to, and in fact did, register and compensate the Defendants, provide the Defendants with Morgan Stanley operational and sales systems, research and development, sales assistants and support, reputation and goodwill, as well as provide the Defendants with Morgan Stanley customers, such as (1) "walk-ins," (2) "call-ins," (3) reassignments, (4) clients from Morgan Stanley-sponsored seminars, (5) leads from lists purchased from mail-order firms, (6) leads from the Morgan Stanley national advertising campaigns, (7) leads from customer responses to national television campaigns, (8) leads responding to Morgan Stanley newspaper coupons, (9) leads calling Morgan Stanley's toll-free telephone number, (10) leads from blanket mailings to zip codes, and (11) other customer leads and sales advantages resulting from Morgan Stanley's goodwill, reputation, and name recognition in the securities industry. (Pierce Affidavit, paragraph 15).

The Defendants have violated their Employment Agreements and their Distribution Agreements by misappropriating confidential customer information for the use of soliciting Morgan Stanley customers.

**III.     PENDING ARBITRATION OF THIS DISPUTE, THE DEFENDANTS, AND ALL THOSE ACTING IN CONCERT WITH THEM SHOULD BE ENJOINED FROM VIOLATING THE CONFIDENTIALITY AND NON-COMPETE PROVISIONS OF THEIR EMPLOYMENT AGREEMENTS**

The issuance of injunctive relief in this case is proper because Morgan Stanley has demonstrated (i) a clear right to the relief being sought, (ii) the likelihood of immediate and irreparable harm which cannot be compensated by damages, (iii) that an injunction would operate to restore the parties to the status quo as it existed prior to the Defendants' wrongful conduct, and (iv) that greater injury will result from denial of the injunction than from its being granted.  United States v. Nutri-Cology, Inc., 982 F.2d 394, 397 (9th Cir. 1982) (the moving party is entitled to such relief if it shows "a combination of probable success on the

- 6 -

7146-3 pjb

Jones & Colver, LLC.
Attorneys at Law
1900 West Benson Blvd., Suite 201
Anchorage, Alaska 99517
Telephone:  (907) 272-6511
Fax: (907) 276-6511

1  merits and the possibility of irreparable injury"); Stein v Barton, 740 F. Supp. 743, 756 (D.
2  Alaska 1990). Temporary restraining orders are appropriate relief from such harm. <u>Merrill
3  Lynch v. McClafferty</u>, 287 F.Supp. 2d 1244 (D. Haw. 2003) (granting TRO prohibiting
4  employee from violating his employment agreement with his former firm and ordering
5  parties to arbitrate their dispute under Federal Arbitration Act, where: (1) firm showed
6  likelihood of success on merits because evidence tended to show that employee used
7  confidential client information to contact and solicit firm clients to transfer accounts to his
8  new employer, which, even assuming contacts were matter of professional courtesy,
9  appeared likely to violate covenants that were valid under state law; (2) firm showed that it
10 would be irreparably harmed, absent TRO, as disclosure of customers' financial information
11 to third parties breached firm's fiduciary duties and could result in loss of trust; (3) balance
12 of hardships tipped strongly in favor of firm and would not unduly burden employee, who
13 was ordered to comply with agreement that he had made; and (4) TRO served public
14 interest).

15      In the context of securities dealers, it is particularly well established that
16 misappropriation of confidential customer information and the use of such information to
17 solicit customers constitutes irreparable injury sufficient to warrant injunctive relief. For
18 example, this exact relief has been issued in decisions by both U.S. District Courts in the
19 State of Washington. See, e.g. <u>Merrill Lynch v Green & Newlight</u>, C.A. No. 93-1402R
20 (W.D. WA. 1993). See also <u>Merrill Lynch v Mathes & Schaben</u>, C.A. No. 90-3060-AAM
21 (E.D. WA. 1990); <u>Morgan Stanley DW Inc. v Veliz</u>, No. CO4-5174 FDB (W.D. WA.,
22 Tacoma Division, 2004); <u>Morgan Stanley DW Inc. v O'Neill</u>, No. CO5-5092 RJB (W.D.
23 WA., Tacoma Division, 2005). In fact, just nine months ago, this Court granted injunctive
24 relief under very similar circumstances. <u>Morgan Stanley DW Inc. v. Adams, et al</u>, Case No.
25 A05-0217 CV (RRB) (C. Alaska 2005).

26    **A.    Morgan Stanley Has Demonstrated a Clear Right to Relief**.

- 7

Jones & Colver, LLC.
Attorneys at Law
1900 West Benson Blvd., Suite 201
Anchorage, Alaska 99517
Telephone: (907) 272-6511
Fax: (907) 276-6511

7146-3 pjb

Morgan Stanley's right to relief is clearly set forth in the express language of the Defendants' employment contracts. These agreements are enforceable. In Perry v. Moran, 109 Wn.2d 691, 697, 748 P.2d 224 (1987), modified on reconsideration, 111 Wn.2d 885, 766 P.2d 1096, cert. denied, 492 U.S. 911 (1989), the Washington State Supreme Court re-affirmed the general validity of non-compete clauses of the type contained in Morgan Stanley's employment contract. The plaintiff in Perry was an accounting firm that sought relief for violation of a non-compete clause in defendant's employment contract. Defendant worked as the manager of one of plaintiff's departments. In that position, the defendant met a number of the plaintiff's clients.

Like the present case, employees of the plaintiff firm were the primary, if not exclusive, contacts for firm clients, and accordingly perfectly situated to lure away the employer's clients after termination, by playing upon the goodwill the accounting firm had paid them to develop and maintain with those clients.

The court upheld the provision's enforceability, stating a three-part test for determining the reasonableness of such covenants:

> Whether a covenant is reasonable involves a consideration of three factors: (1) whether the restraint is necessary for the protection of the business or goodwill of the employer, (2) whether it imposes upon the employee any greater restraint than is reasonably necessary to secure the employer's business or goodwill, and (3) whether the degree of injury to the public is such loss of the service and skill of the employee as to warrant nonenforcement of the covenant.

Id. at 698, citing Knight, Vale & Gregory v. McDaniel, 37 Wn. App. 366, 369, 680 P.2d 448, rev. denied, 101 Wn.2d 1025 (1984).

The covenants at issue in this case meet all three prongs of the test. First, the nature of plaintiff's business is closely analogous to the accounting firm in Perry; employees are usually the primary, if not sole contact between the plaintiff stockbrokerage firm and the client. This is recognized in the language of the restrictive covenant itself. The only way

- 8

Jones & Colver, LLC.
Attorneys at Law
1900 West Benson Blvd., Suite 201
Anchorage, Alaska 99517
Telephone: (907) 272-6511
Fax: (907) 276-6511

7146-3 pjb

that plaintiff can protect its client base from departing employees is through the use of a restrictive covenant.

Washington law supports the issuance of an injunction to protect an employer's confidential information, even where the departing employee has not signed a non-compete agreement.  In Davis Co. v. Miller, 104 Wash. 444, 177 Pac. 323 (1918), the Supreme Court noted the opportunity property managers have due to their knowledge of their employer's client's business and confidential information to the employer's detriment.  The court granted the employer an injunction prohibiting a former employee from soliciting clients from his employer after termination, despite the fact that no non-compete agreement had been executed by the parties.  In this present case now before the court the parties executed non-compete agreements, whereby the employees have expressly agreed not to solicit the employer's clients and that an injunction may issue to enforce the promises made.

As in Davis, supra, the Alaska Supreme Court has held that a non-compete agreement, event if not in writing, may be enforced.  The case of Metcalfe Investments, Inc., v Garrison, 919 P.2d 1356 involved an alleged oral non-competition agreement arising out of employment at a real estate brokerage firm.  Like the case at bar, it did not restrict the employee's right to pursue her profession.[3]  Rather it restsricted the use by an ex-employee of expropriating information and customers that Metcalfe Investments had procured at its own effort and expense.

The case is especially instructive in that it notes that as to a non-competition agreement that does not restrict one from practicing his profession, that the standards of enforcement need only pass a less stringent test for enforcement.  The court stated in pertinent part at page 1361 of the opinion as follows:

---

[3] The court notes at page 1360 that "instead, it is an agreement that left Garrison free to set up a carbon copy of Metcalfe Investments right down the street if she wished."

- 9

7146-3 pjb

Jones & Colver, LLC.
Attorneys at Law
1900 West Benson Blvd., Suite 201
Anchorage, Alaska 99517
Telephone: (907) 272-6511
Fax: (907) 276-6511

> Such restrictive covenants are subject to less stringent test of reasonableness than blanket prohibitions of competitions See *Restatement (second) of Contracts,* Sec.188 comment g. (1981) ("A) restraint is easier to justify…<u>if the restraint is limited to the taking of his former employer's customers as contrasted with competition in general</u>. *Carron & Black of Ill. Inc., v Magner*, … 494 N.E. 2d 785, 793 (1986).
>
> The limited scope of the activity restraint is narrowly drawn to protect Metcalf Investments' in its customer lists. (emphasis added).

The present non-complete restrictions that were agreed to by the defendants herein are similar in that the covenants therein do not bar them from pursuing their professions as financial advisors. The covenants do however prevent exportation of information and soliciting of clients.

In <u>Ed Nowogroski Ins. Inc. v. Rucker</u>, the court considered whether confidential information loses its protected status under the Uniform Trade Secrets Act because it has been memorized rather than taken in written form. 137 Wn.2d 427, 436 (1999). In <u>Rucker</u>, defendant former employees were hired by defendant competitor after leaving their jobs with plaintiff former employer, an insurance company. <u>Id.</u> at 429. Plaintiff then sued defendants for misappropriation of plaintiff's trade secrets by retaining and using its confidential client lists. <u>Id.</u> at 430-432. The trial court found that, while the lists were trade secrets, defendants did not violate the Uniform Trade Secrets Act by using information that they had memorized, as opposed to taking written information. <u>Id.</u> at 434. The Court of Appeals disagreed and reversed. <u>Id.</u> at 435-36. Defendants appealed, not contesting that the lists themselves were trade secrets or that the lists were "appropriated" by memory. <u>Id.</u> Rather, they argued that information in the memory of an employee about the lists was not a trade secret. <u>Id.</u> In affirming, the court rejected defendants' arguments and ruled that the protections of the Uniform Trade Secrets Act and the common law applied not only to written information, but

- 10

7146-3 pjb

Jones & Colver, LLC.
Attorneys at Law
1900 West Benson Blvd., Suite 201
Anchorage, Alaska 99517
Telephone: (907) 272-6511
Fax: (907) 276-6511

to memorized information as well.  The Supreme Court affirmed the decision of the Court of Appeals.  Id. at 450.

Much of the Defendants' book of business was assigned to them by Morgan Stanley. As a condition of these assignments by Schommer, Soiseth, O'Reilly, and Ingrim signed Distribution Agreements reaffirming their covenants not to misappropriate Morgan Stanley trade secrets or solicit the Morgan Stanley clients assigned as a part of such Distribution Agreement.  The fact that these Defendants violated the terms of their original Employment Agreements, and the reaffirmation of those terms in the Distribution Agreements, makes their misappropriation of trade secrets and unlawful solicitation of Morgan Stanley clients especially egregious.

Second, the restriction is narrowly tailored to this end.  It applies only to clients with whom Defendants had contacts by virtue of their employment with Morgan Stanley. For Schommer and Ingrim, the restriction is enforceable within a 100 mile radius and for one year. For Soiseth and O'Reilly, the restriction is enforceable within a 25 mile radius and for 90 days.  The court in Knight, supra, upheld a covenant of three-year duration on similar facts.

Third, stock brokerage services are readily available; clients are free to take their business to whomever they choose.  See Wood v. May, 73 Wn.2d 307, 310, 438 P.2d 587 (1968) (availability of other sources of Defendants' types of services is a relevant inquiry). Regardless, Morgan Stanley's clients are free, at any time, to transfer their assets.  The proposed temporary restraining order merely requires Defendants to abide by their Agreements and prohibits them from soliciting Morgan Stanley's clients.

**B. Morgan Stanley Will Suffer Irreparable Injury if Defendants and All Those Acting in Concert With them Are Not Enjoined.**

- 11

7146-3 pjb

Jones & Colver, LLC.
Attorneys at Law
1900 West Benson Blvd., Suite 201
Anchorage, Alaska 99517
Telephone: (907) 272-6511
Fax: (907) 276-6511

Morgan Stanley faces significant irreparable harm on numerous levels, including the infliction of incalculable damages, the loss of goodwill and client confidentiality, and a threat to office stability, all of which necessitate the issuance of immediate injunctive relief.

First, immediate injunctive relief is necessary to protect Morgan Stanley's confidential customer list. Washington common law precedents have long granted protection to customer lists and information. See <u>J.L. Cooper & Co. v. Anchor Securities Co.</u>, 9 Wn.2d 45 (1941) (injunctive relief available to restrain former employee from soliciting former employer's customers utilizing customer lists and other confidential information learned in the course of this employment); <u>Davis v. Miller</u>, 104 Wash. at 447 (enjoining the plaintiff's former employee from using plaintiff's customer lists and confidential knowledge of plaintiff's business to solicit customers). Consistent with Washington law, courts throughout the country have accorded protected status to a stockbrokerage firm's customer list. <u>See</u>, e.g., <u>Merrill Lynch v. Hegarty</u>, 808 F. Supp. 1555 1558 (S.D. Fl. 1992); <u>Ruscitto v. Merrill Lynch</u>, 777 F. Supp. 1349, 1354 (N.D. Tex. 1991), aff'd, 948 F.2d 1286 (5th Cir. 1991). Second, irreparable harm also lies in the fact that Morgan Stanley promises to its clients that their financial information, market transactions, and investment assets are known only to themselves, Morgan Stanley, and Morgan Stanley employees. Clients trust Morgan Stanley to keep their information confidential and Morgan Stanley has an obligation to do so. <u>See In re: Rosenbaum Grain Corp.</u>, 103 F.2d 656 (7th Cir. 1939); <u>Boeing Co. v. Sierracin Corp.</u>, 108 Wn.2d. 38, 48 (1987) (finding a confidential relationship alone is enough to prohibit disclosures of proprietary information."). One of Morgan Stanley's clients has already expressed concern about that the fact that his contact information has been shared with a third party without his permission. (*See* Haymans Affidavit, paragraph 4). Morgan Stanley's customer lists and other proprietary information constitute trade secrets under the Uniform Trade Secrets Act as enacted in Alaska ("UTSA"). Alaska Stat. 45.50.910 *et seq*. If Defendants are permitted to continue their conduct, each client's sensitive financial

- 12

Jones & Colver, LLC.
Attorneys at Law
1900 West Benson Blvd., Suite 201
Anchorage, Alaska 99517
Telephone: (907) 272-6511
Fax: (907) 276-6511

7146-3 pjb

information would lose the confidentiality guaranteed by Morgan Stanley to its customers, thereby causing customers to lose their trust and confidence in Morgan Stanley.

Third, immediate injunctive relief also is necessary to protect Morgan Stanley's Anchorage, Alaska office and to discourage competitor firms, such as AGE, from making financial inducements to induce Morgan Stanley's employees to breach their plainly reasonable contractual commitments. See Merrill Lynch v. Kramer, 816 F. Supp. 1242, 1247 (N.D. Ohio, 1992) ("Finally plaintiff argues convincingly that injunctive relief is required to protect it from similar conduct by other employees and to discourage competitor firms . . . from paying such employees large sums of money to induce them to breach their contracts, to confiscate confidential client records and to divert those clients to the competitor").

Morgan Stanley lacks an adequate remedy at law. Absent injunctive relief, it will be impossible to even remotely determine Morgan Stanley's damages with any reasonable degree of certainty. In Merrill Lynch v. Bradley, 756 F.2d 1048, 1055 (4th Cir. 1985), the Fourth Circuit emphasized that Merrill Lynch "faced irreparable non-compensable harm in the loss of its customers" (emphasis added). Similarly, in Merrill Lynch v. Stidham, 658 F.2d 1098 (5th Cir. 1981), the United States Court of Appeals for the Fifth Circuit reached the identical result, holding that the Stidham breach of his employment agreements and misappropriation of the stockbrokerage firm's confidential information caused irreparable harm.

> The injury here is such that damages could not adequately compensate. Were Stidham permitted by the law to exploit the clientele of their former employers, every investment that reasonable flowed from the exploitation should be included in the damages award. *How such a figure could be arrived at escapes us*.

Id. at 1102 (emphasis added).

It is impossible to determine at this time the number of Morgan Stanley clients who will be "pirated away" by the Defendants, nor is it possible to determine with any degree of

- 13

Jones & Colver, LLC.
Attorneys at Law
1900 West Benson Blvd., Suite 201
Anchorage, Alaska 99517
Telephone: (907) 272-6511
Fax: (907) 276-6511

7146-3 pjb

certainty the commissions each that these Morgan Stanley clients will generate not only this year, but 5, 10 or 20 years into the future. See Merrill Lynch v. Kramer, 816 F. Supp at 1247. Accordingly, the Defendants' breach of their post-termination covenants involve financial loss to Morgan Stanley which is incapable of measurement, requiring the issuance of an injunction to protect Morgan Stanley from irreparable harm.

**C. Injunctive relief would restore the parties to the status quo as it existed prior to Defendants wrongful conduct.**

Morgan Stanley seeks to return to the status quo to the extent the Defendants are required to return all confidential data each of them wrongfully diverted from Morgan Stanley. A return to the status quo further requires that each of the Defendants is enjoined from further solicitation of Morgan Stanley's customers and that the Defendants not be permitted to "enjoy" the fruits of their deliberate illegal acts.

Ordering the Defendants to stop illegal solicitation efforts would send a message to the Defendants and others similarly situated that they cannot violate employment contracts with impunity and at the same time enjoy the fruits of their willful solicitations. To allow and encourage a broker to fully and pre-emptively breach his legal obligations before Morgan Stanley can seek relief in Court, and then to allow him to continue to profit by his own opportunistic wrongdoing, would be a terrible promotion of deliberate pre-planned and cynical breaches of legal obligations.

**D. Greater Injury Will Result From Denial of the Injunction Than From Its Being Granted.**

The benefit of injunctive relief to Morgan Stanley far outweighs any detriment to the Defendants; see, e.g., Merrill Lynch v. Bradley, 756 F.2d at 1053-54. On the one hand, an injunction would protect Morgan Stanley's goodwill, business reputation, investment in the development of its customer list and responsible public outreach, and its plainly reasonable contract rights. Most importantly, however, an injunction would promote the public interest

- 14

Jones & Colver, LLC.
Attorneys at Law
1900 West Benson Blvd., Suite 201
Anchorage, Alaska 99517
Telephone: (907) 272-6511
Fax: (907) 276-6511

7146-3 pjb

by protecting Morgan Stanley's highly sought client list, the confidentiality of Morgan Stanley's clients' records, and the enforcement of reasonable contractual restrictions to protect legitimate business interests.

The Defendants, by contrast, in return for financial inducements from AGE, have intentionally breached their contractual commitments and have deliberately misappropriated Morgan Stanley's property. In this case, Morgan Stanley seeks only to require the Defendants to honor the terms of the employment agreements they freely executed, to prevent the unfair advantage taken by Defendants and their new employers of Morgan Stanley property, and to enjoin Defendants' "piracy" of Morgan Stanley's most precious business asset -- its clients.

It should be emphasized that Morgan Stanley seeks not to prevent any of the Defendants from earning a living as a "stockbroker," even though doing so will be with a "rival" area company. The Defendants will not be enjoined from pursuing their livelihoods as financial advisors as they will all be free to seek new customers or to service existing customers of AGE. See Ruscitto v. Merrill Lynch, 777 F. Supp. at 1354 ("The present record mainly shows that Merrill Lynch's request is reasonable. Ruscitto may continue to compete as a stock broker in the same locale. He is merely restricted for one year from soliciting clients whom he served or whose names became known to him while employed at Merrill Lynch.") Rather, Morgan Stanley seeks only to enjoin the Defendants from doing so by stealing Morgan Stanley customers, a condition to which each of them specifically agreed. Merrill Lynch v. Bradley, 756 F.2d at 1050; Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton, 844 F.2d 726 (10th Cir. 1988).

In sum, Morgan Stanley is entitled to injunctive relief both to enforce the terms of its employment contracts and to protect against the conversion and misappropriation of its confidential and proprietary customer list and information.

- 15

7146-3 pjb

Jones & Colver, LLC.
Attorneys at Law
1900 West Benson Blvd., Suite 201
Anchorage, Alaska 99517
Telephone: (907) 272-6511
Fax: (907) 276-6511

**IV. EVEN WHERE ARBITRATION IS REQUIRED, MORGAN STANLEY IS STILL ENTITLED TO INJUNCTIVE RELIEF, PENDING ARBITRATION.**

NASD Rule 10335 specifically directs claimants to seek injunctive relief from courts of competent jurisdiction. Any argument that this court should first direct this motion for injunctive relief to arbitration is without merit.

**V. CONCLUSION**

For all the reasons stated above, Morgan Stanley asks the Court for a temporary restraining order to preserve the status quo pending the outcome of arbitrations of Schommer, Soiseth, O'Reilly, and Ingrim.

Dated this 5th day of June, 2006.

          Jones & Colver, LLC

          S/ Calvin R. Jones
          1900 West Benson Blvd., Suite 201
          Anchorage AK 99517
          Phone: (907) 272-6511
          Fax: (907) 276-6511
          E-mail: pj@jonescolver.com
          Alaska Bar #_7610109_____

*Of Attorneys for Plaintiff Morgan Stanley DW Inc.*

- 16

Jones & Colver, LLC.
Attorneys at Law
1900 West Benson Blvd., Suite 201
Anchorage, Alaska 99517
Telephone: (907) 272-6511
Fax: (907) 276-6511

7146-3 pjb

**CERTIFICATE OF SERVICE**

1
2    I hereby certify that on the ____th day of June, 2006, I served the foregoing
3 document on the following parties at the following address:
4
5
6 by hand delivering to _____, attorney for Defendants, a true and correct copy
7 thereof on said day, and mailing a true and correct copy thereof by placing in a sealed
8 envelope addressed to them and deposited in the U.S. Post Office at Anchorage, Alaska on
9 said day with postage prepaid.
10
11
12                                                          _____
13
14
15
16
17
18
19
20
21
22
23
24
25
26

CERTIFICATE OF SERVICE - 1

Jones & Colver, LLC
1900 West Benson Blvd. Suite 201
Anchorage AK 99517
Telephone: (907) 272-6511
Fax: (907) 276-6511