PDSIS Group 880

## JOINT PRODUCTION AGREEMENT
(Joint Production Asset Addendum)

**WHEREAS**, this Agreement is being entered into on __2/1__, __05__ solely for the convenience of Steve Pedersen, ("Joint Producer 'A'") and Ty Schommer, ("Joint Producer 'B'")[1][2] Lynn Soiseth, ("Joint Producer 'C'"), James Vincent O'Reilly III, ("Joint Producer 'D'") and Scott Ingrim, ("Joint Producer 'E'") (herein collectively the "Joint Producers") to better service clients and to share in commissions generated by customer accounts, and nothing in this Agreement is intended to affect, change, modify or otherwise alter in anyway Morgan Stanley DW Inc.'s d/b/a *Morgan Stanley's* ("Morgan Stanley) ownership of client accounts and documents, and confidential company records and information.

**NOW, THEREFORE**, the Joint Producers agree as follows:

Commencing __2/1__, __05__, the Joint Producers will enter into a Joint Production Arrangement (the "Joint Production Arrangement") under the following terms and conditions.

A Joint Account Number will be set up for the Joint Production Arrangement. All client accounts to be handled under the Joint Account Number are set forth on the attached Addendum and will be deemed Joint Production Assets (the "Joint Production Assets"). See Joint Production Asset Addendum attached hereto as Exhibit "A".

As between the Joint Producers, all gross commissions and other business revenues generated under the Joint Account Number will be split between the Joint Producers as follows: **[Please select only one]:**

(a)   Joint Producer A 35% and Joint Producer B 32% and Joint Producer C 18% and Joint Producer D 14% and Joint Producer E 1%; or

The Joint Production Arrangement may be terminated at any time by any Joint Producer without notice. In the event of termination of the Joint Production Arrangement no commissions will be divided after the date of termination.

Responsibility for distribution and allocation of assets following the termination of a Joint Production Arrangement lies solely and exclusively within the discretion of the Branch Manager. The Branch Manager will make such asset allocation acting always in the best interests of the clients taking into consideration the desires of the Joint Producers as set forth herein. **Where more than one former member of the terminated arrangement remain employed by the Firm in the branch where the Arrangement arose, upon termination, assets will be divided as follows:** .

---

[1] JPAs may be comprised of any number of FAs or combination of FAs and Associate FAs. In the event there are more than two FAs involved, add Joint Producers C, D and E (etc.) as needed. Under no circumstances may a JPA include a Registered or Non-Registered Sales Assistant. In addition, no JPA may contain Joint Producers from more than one branch without prior written approval of the Compliance Department and of each affected Branch Manager and Regional Director. You should note that Team or Group Names must contain only names or initials of active Joint Producers.

[2] Each Joint Producer must sign his/her own Joint Production Acknowledgement. Thus, if there are 3 Joint Producers, there will be 3 separate Acknowledgements.

Exhibit __P__
Page __1__ of __4__        Exhibit P 1

(a) (i) client accounts opened prior to commencement of the Joint Production Arrangement (and all derivative accounts opened at anytime prior to or during the Joint Production Arrangement) will revert to the Joint Producer who brought the client account to the Joint Production Arrangement; and

Joint Producers will continue to share in commissions during periods of short term disability covered under the Morgan Stanley Short Term Disability Plan. In the event of death or total permanent disability (as that term is defined in the Morgan Stanley Long Term Disability Plan) or termination of employment for any reason from Morgan Stanley by any one or more Joint Producer, the following will occur:

- Client accounts opened prior to or after the commencement of the Joint Production Arrangement (and all derivative accounts opened at anytime) will revert to the Joint Producer who brought the client account to the Joint Production Arrangement and/or opened the account in the Joint Production Arrangement to the extent said Joint Producer remains employed by the Firm as an FA; and

- All other client accounts opened prior to or after the commencement of the Joint Production Arrangement (and all derivative accounts opened at anytime) by the departing Joint Producer will be distributed in accordance with the Firm's established Account Distribution protocol. To the extent that the remaining former Joint Producers have pre-existing relationships with one or more of these clients, said relationships will be taken into consideration by the Branch Manager when making distributions under the protocol.

In the event there is any disagreement, controversy or claim arising out of or relating to, this Agreement, its enforceability or its breach, such will be settled in the sole discretion by the respective Branch Manager and/or Regional Director. At the election of the respective Branch Manager and/or Regional Director any such disagreement, controversy or claim may be referred for resolution through the CARE Program Process. In the event that mediation or arbitration is required such will be handled through the CARE Program Process and any judgment upon a determination or award entered by the respective mediators or arbitrators may be entered in any court having jurisdiction thereof. Should this matter be brought to mediation or arbitration and any provision(s) of this Agreement, for any reason, be adjudged void, invalid, or unenforceable by an arbitrator or arbitration panel, a regulatory body or a court of law, the remainder of the Agreement will still continue and remain in full force and effect.

This Agreement is subordinate to any agreement between any Joint Producer and Morgan Stanley, and the Agreement may exist only so long as it is acceptable to Morgan Stanley and in accord with its policies and procedures. Morgan Stanley may terminate the Joint Production Agreement at any time and without notice. Nothing in this Agreement shall be construed to amend or modify any policy or procedure of Morgan Stanley or any management directive currently existing or as may exist in the future, or any rule or regulation of any regulatory or securities organization or agency. Nor shall this Agreement be construed to amend or modify the Joint Production Agreement Acknowledgments. This Agreement may be modified only by a writing signed by all Joint Producers and with the approval and authorization of Morgan Stanley.

This Agreement shall be construed in accordance with the laws of the State of Alaska.

By signing below each Joint Producer acknowledges that he/she understands and agrees to all of the terms and conditions of the Agreement.

_2/01/05_
DATE

_[signature]_
Joint Producer A

_2/1/05_
DATE

_[signature]_
Joint Producer B

_2/1/05_
DATE

_[signature]_
Joint Producer C

_2-1-05_
DATE

_[signature]_
Joint Producer D

_2/1/05_
DATE

_[signature]_
Joint Producer E

**Reviewed For Morgan Stanley DW Inc.**

BY: _[signature]_
**Branch Manager**

Date: _2/3/05_

Exhibit __P__
Page __3__ of __4__

3

## JOINT PRODUCTION ASSET ADDENDUM
### Attached as Exhibit A to the Joint Production Agreement

For purposes of the Joint Production Agreement dated 2, 1, 2005 between Steve Pedersen(Joint Producer A), and Ty Schommer(Joint Producer B)[3] and Lynn Soiseth(Joint Producer C) and James Vincent O'Reilly III(Joint Producer D) and Scott Ingrim (Joint Producer E), Joint Production Assets shall include the following:

(f)    All client accounts handled under FA Number  880 .

_____    02-01-05
Joint Producer A                Date

_____    2/1/05
Joint Producer B                Date

_____    2-1-05
Joint Producer C                Date

_____    2-1-05
Joint Producer D                Date

_____    2/1/05
Joint Producer E                Date

---

[3] See Footnote 2 of the Joint Production Agreement.

Exhibit  P
Page  4  of  4

4