William M. Bankston, Esq.
Barbra Z. Nault, Esq.
Bankston Gronning  O'Hara, P.C.
601 West 5th Avenue, Suite 900
Anchorage, Alaska 99501
(907) 276-1711 (telephone)
(907) 279-5358 (fax)
wbankston@bankston.to

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

AT ANCHORAGE

| | |
|---|---|
| MORGAN STANLEY DW INC.,<br>a Delaware Corporation,<br><br>                  Plaintiff,<br><br>v.<br><br>SCOTT INGRIM, VINCE O'REILLY,<br>TY SCHOMMER, and LYNN SOISETH,<br><br>               Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 3:06-cv-00135 [TMB]<br>) |

**OPPOSITION TO MORGAN STANLEY'S
MOTION FOR A TEMPORARY RESTRAINING ORDER
<u>AND CROSS MOTION TO STRIKE HEARSAY TESTIMONY</u>**

       Defendants Scott Ingrim, Vince O'Reilly, Ty Schommer and Lynn Soiseth (collectively "Defendants"), by and through counsel, hereby oppose Plaintiff Morgan Stanley D.W. Inc.'s ("Morgan Stanley") Motion for Temporary Restraining Order. For the

BANKSTON GRONNING O'HARA, P.C.
Attorneys at Law
601 W. 5th Avenue, Suite  900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

reasons set forth below, Morgan Stanley's motion should be denied. Moreover, Morgan Stanley's motion relies primarily on hearsay. By cross motion, pursuant to Federal Rule of Evidence 801 and 802, Defendants hereby move to strike the hearsay testimony submitted by Morgan Stanley. Defendants' Opposition and Cross-Motion are supported by the following memorandum and affidavits attached thereto.

## **MEMORANDUM**

**I.    INTRODUCTION**

Without providing <u>any</u> evidence supporting its claims that Defendants have misappropriated confidential information, and scant evidence that Defendants have contacted clients, Morgan Stanley has nonetheless asked the court to issue a temporary restraining order ("TRO"). The facts below will demonstrate that Morgan Stanley has not moved for a TRO because it is an aggrieved party, or because it believes it will suffer irreparable harm, but rather in an attempt to gain a competitive advantage to lure away *Defendants'* clients to Morgan Stanley.[1]

Morgan Stanley asks this court to issue a TRO while simultaneously engaging in deceptive business practices with regards to the clients it claims belong to Morgan Stanley. When financial advisors leave, Morgan Stanley has a corporate policy instructing its employees: (a) not to tell clients where the advisors had gone, and (2) not to give the clients their advisors' contact information.[2] As demonstrated below, Morgan Stanley recently refused to give one of Vincent O'Reilly's clients his contact information, and falsely told the client that it did not know where Mr. O'Reilly had gone. Morgan Stanley's

---

[1] Contrary to Morgan Stanley's assertions, it did not bequeath clients to the Defendants. Rather, the majority of Defendant have testified that 5% or less of their clients were referrals from Morgan Stanley, walk-ins or call-ins.

[2] Realizing that the NASD's bylaws prohibit such conduct, this court specifically ordered Morgan Stanley to "respond to any inquires about Defendants' whereabouts by providing their new contact information."

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

deceptive business practice in this regard is the specific reason Defendants chose to send announcements to their clients that they were leaving Morgan Stanley.

Morgan Stanley's motion for a TRO lacks legal and factual substance. In deciding the motion, this court must look to how a National Association of Securities Dealers, Inc. ("NASD") arbitration panel will decide this dispute. In cases such as the present, the NASD consistently dissolves restraining orders which prevent financial advisors from contacting their clients, even in the face of restrictive non-solicitation and non- competition agreements. The primary tenet of decisions in this area is that *client choice* militates against the issuance of a TRO. When clients need financial advice, they look to their advisor – not to the institution employing the advisor. As this motion is being decided, there are clients in limbo, who need to be able to interface with the financial advisor of their choice. NASD decisions consistently recognize that client choice is paramount, and thus the NASD regularly abolishes any orders restricting a client's ability to deal with the financial advisor of their choice.

Finally, Morgan Stanley motion for a TRO should be denied because Morgan Stanley cannot prove the elements supporting its claims against Defendants. Morgan Stanley is not entitled to an injunction because: (a) Defendants have not taken any of Morgan Stanley's confidential information; (b) Defendants have not solicited any of Morgan Stanley's clients; (c) at arbitration, Morgan Stanley will lose on its claims for breach of contract and misappropriation of trade secrets; and (d) Morgan Stanley has not demonstrated that it will suffer irreparable harm.

## II.    MORGAN STANLEY'S HEARSAY TESTIMONY SHOULD BE STRICKEN FROM THE RECORD

Before addressing the facts in this matter, Defendants must point out that Morgan Stanley's motion relies primarily on inadmissible hearsay which should not be considered

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

by the court. Federal Rule of Evidence 801 defines "hearsay" as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Federal Rule of Evidence 802 provides that hearsay "is not admissible except as provided by these rules . . ."

Admission of hearsay statements interferes with "the right of litigants to confront the witnesses against them and to test their credibility through cross-examination."[3] Defendants are simply unable to test the credibility of the statements made in the affidavits submitted to the court by Morgan Stanley, as the statements were made by unnamed persons not present before the court. Admitting the hearsay statements in the affidavits would thus deprive Defendants of what Wigmore has called "the greatest legal engine ever invented for the discovery of truth."[4] Evidence based on hearsay is inadmissible and unpersuasive and should not form the basis of the extraordinary remedy of injunctive relief.[5]

Defendants hereby object to the following hearsay, and respectfully move the Court strike the underlined portions of Morgan Stanley's testimony from the record, as no exceptions to the hearsay rule apply:

### 1.   *Affidavit of Patrick Davids*

At paragraph 2, Davids testified: "Some of the Morgan Stanley clients have told me that they have received materials in the mail from the Former Advisors that the Morgan Stanley clients have described to me as documents that are intended to encourage Morgan Stanley clients to transfer their assets to A.G. Edwards & Sons." At paragraph 3, Davids

---

[3] *Colorificio Italiano Max Meyer, S.P.A. v. S/S Hellenic Wave*, 419 F.2d 223, 224 (5th Cir. 1969). *See also NLRB v. Imparato Stevedoring Corp.*, 250 F.2d 297, 302 (3rd Cir. 1957); *Rossville Salvage Corp. v. S.E. Graham Co.*, 319 F.2d 391, 396 fn.5 (3rd Cir. 1963).
[4] *Colorifico*, 419 F.2d at 224 (internal quotes omitted).
[5] *Ocean Bio-Chem, Inc. v. Turner Network Television, Inc.*, 741 F.Supp. 1546, 1559 (S.D. Fla. 1990).

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

testified: "<u>One Morgan Stanley client told me that at one time he spoke to Schommer and decided to transfer his account to A.G. Edwards & Sons. Another Morgan Stanley client told me he spoke to O'Reilly and that O'Reilly discussed with the Morgan Stanley client the process and cost of transferring assets from Morgan Stanley to A.G. Edwards & Sons.</u>"

### 2.    *Affidavit of Laura Godenzi*

At paragraph 3, Godenzi testified that "I spoke with a Morgan Stanley client <u>who told me she had received something in the mail from Lynn Soiseth regarding the moving of her account</u>." At paragraph 4, Godenzi testified that "I spoke with a Morgan Stanley client <u>who told me she had talked with Vince O'Reilly and that he would be taking her paperwork and moving her account</u>." At paragraph 5, Godenzi testified that "I spoke with another Morgan Stanley client on June 2, 2006 . . . <u>The client stated he was aware of what was going on and that he had been working with his financial advisor for a long time. It was apparent he was aware of the change before I called to inform him (*sic*) it</u>."

### 3.    *Affidavit of Branch Haymans*

At paragraph 2, Haymas testified "I have contacted a number of Morgan Stanley clients who were previously serviced by the Former Advisors. <u>More than one Morgan Stanley client has reported to me that they had been contacted by Pam Parker</u>, a former Morgan Stanley Sales assistant who also resigned on May 26 to work with the former Advisors at A.G. Edwards & Sons, <u>and that Ms. Parker has requested that the Morgan Stanley clients transfer their assets from Morgan Stanley to A.G. Edwards & Sons. A number of other clients have reported that they have been contacted (either directly or by way of message) by the Former Advisors and that the Former Advisors have requested the Morgan Stanley clients to transfer their assets to A.G. Edwards & Sons.</u>" At paragraph 3, Haymans testified "<u>Morgan Stanley clients that were formerly serviced by the Former Advisors have also advised me that they have received documents in the mail from A.G. Edwards & Sons.</u>" At paragraph 4, Haymans testified: "<u>One particular Morgan Stanley</u>

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY

client has expressed to me that he was concerned by the fact that the Former Advisors had contacted him. The Morgan Stanley client expressed concern that the Former Advisors had his telephone number because he had not authorized Morgan Stanley to provide his contact information to any third parties. The Morgan Stanly client asked what steps Morgan Stanley was taking to protect his confidential information."

### 4.    *Affidavit of Steve McSharry*

At paragraph 2, McSharry testified that "Subsequent to the resignation of the Former Advisors, I have contacted a Morgan Stanley client who told me that he received in the mail a packet of documents from the Former Advisors. From the description of the materials provided to me by the Morgan Stanley client (he specifically mentioned that one of the documents contained the word "Edwards"), in my opinion it sounds like the packet of documents contained a form used in the industry to transfer assets from one brokerage firm to another. The client also relayed that the packet of documents that he received from the Former Advisors contained the new business cards of the Former Advisors with their new contact information at A.G. Edwards." At paragraph 3, McSharry testified that "I spoke to a different Morgan Stanley client who called to inquire about the status of his accounts at Morgan Stanley. I place him on hold while I researched his question. When I released the hold, I could hear the Morgan Stanley client discussing his accounts with Pam Parker, a former sales assistant with Morgan Stanley who resigned from Morgan Stanley on May 26, 2006 to work for the Former Advisors at A.G. Edwards & Sons. I worked with Ms. Parker for a number of years and could recognize her voice. I cannot say for certain what Ms. Parker was telling the Morgan Stanley client, but it appeared to me that Ms. Parker was providing the Morgan Stanley client with specific Morgan Stanley account information and advising the Morgan Stanley client to inquire about specific account numbers."

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

### 5.    Affidavit of Harold Pierce

At paragraph 12, Pierce testified that: "<u>I know of at least one Morgan Stanley customer that has reported that they received, via overnight delivery, a packet of documents from the Former Advisors, which encouraged the Morgan Stanley client to transfer their assets to AGE.</u>"

### 6.    Supplemental Affidavit of Harold Pierce

At paragraph 5, Pierce testified that "On June 1, 2006 a news release was circulated by A.G. Edwards & Sons, Inc. <u>which states "FOUR MORGAN STANLEY VETERANS JOIN A.G. EDWARDS OFFICE Bringing An Excess of $300 Million In Client Assets. Exhibit C is a copy of said news release.</u>" (Defendants specifically move that the article attached as Exhibit C to Pierce's affidavit be stricken form the record. Besides being inadmissible hearsay, the article attached by Morgan Stanley is not relevant as it was not drafted by Defendants, but rather issued in St. Louis.)

### 7.    Affidavit of Clark Rush

At paragraph 2, Rush testified: "Subsequent to their resignation, I have contacted a Morgan Stanley client <u>who told me that he received a message from Schommer and that the client had also received a packet of documents that encouraged the Morgan Stanley client to transfer their assets to A.G. Edwards & Sons, the former Advisors' new employer. Another Morgan Stanley client confirmed that he spoke with O'Reilly, who talked to the Morgan Stanley client about transferring his assets from Morgan Stanley to A.G. Edwards & Sons.</u>"

## III.    <u>FACTS</u>

Once the hearsay is stripped from Morgan Stanley's motion, there is no evidence that Defendants have solicited any of Morgan Stanley's clients. Moreover, the facts below

demonstrate that Defendants have not taken any confidential information from Morgan Stanley.

Defendants have each testified that they did not take any files, financial data, electronic data, information, documents or other materials of any sort from Morgan Stanley's offices.[6] Ingram, Schommer and Soiseth each testified:

> as I was cleaning out my office on the evening of May 25, 2006, I encountered Morgan Stanley's current Vice President and Branch Manager, Harold Pierce. When Mr. Pierce inquired as to what I was doing, I indicated that I intended to resign and gave him my resignation letter. I requested Mr. Pierce to look through the boxes which I had packed and perform a check out. He gave me a verbal authorization to take the contents of the boxes. The boxes did not contain any confidential information belonging to Morgan Stanley. Rather, the boxes contained my personal belongings. Mr. Pierce should know this as he inspected the contents.[7]

O'Reilly testified that he took no materials from Morgan Stanley's office, including his own personal belongings (which he hopes he will get back soon.)[8] Thus, the Defendants did not take anything belonging to Morgan Stanley when they vacated their offices: no files, no data, no papers, no storage devices, etc. Moreover, Morgan Stanley even inspected the materials Defendants took from their offices.

Defendants each also left the software they used while at Morgan Stanley's offices. Each Defendant testified:

> I did not take any confidential information from Morgan Stanley.
> Upon resignation, I left my copy of my contact manager software,

BANKSTON GRONNING O'HARA, P.C.
Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

---

[6] See, Affidavits of Scott Ingram, Vincent O'Reilly, Ty Schommer and Lynn Soiseth.
[7] Affidavits of Scott Ingram, Ty Schommer and Lynn Soiseth, at ¶2.
[8] See, Affidavit of Vincent O'Reilly, at ¶2.

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY

**BANKSTON GRONNING O'HARA, P.C.**
Attorneys at Law
601 W. 5th Avenue, Suite  900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

which contained all client notes, addresses and contact info (commonly referred to as "ACT" software) for Morgan Stanley.[9]

Morgan Stanley alleges that the Defendants' assistant printed out a number of "Household" pages and then contorts the facts by implying that Defendants took these records upon resigning from Morgan Stanley.[10] This is not the case. Pam Parker, the person accused of copying the "Household" pages on behalf of the Defendants, was doing so at the request of one of Morgan Stanley's Financial Advisors, Steve Peterson.[11] After she was done copying the Household pages for Mr. Peterson, Parker left the reports at Morgan Stanley's office and never saw them again.[12] She certainly did not take them with her when she made the transition to A.G. Edwards as Morgan Stanley's motion would lead one to believe.

The only information Defendants retained from their former jobs was information contained on software that each Defendant purchased with their own funds and maintained on the home computer of Pam Parker, with the knowledge and encouragement of Morgan Stanley's Branch Manager, Clark Rush – *i.e.* the ACT Database Contact Manager.[13] The ACT Database Contact Manager contains the names, addresses, and phone numbers of clients and the notes each Defendant compiled regarding their clients.[14] None of the information contained on the ACT Database Contact Manager was downloaded from Morgan Stanley's files.[15] The Defendants retained this information so that they could

---

[9] See, Affidavits of Scott Ingram, Vincent O'Reilly, Ty Schommer and Lynn Soiseth, at ¶3.
[10] See, Affidavit of Laura Godenzi, at ¶2.
[11] See, Affidavit of Pam Parker, at ¶2.
[12] *Id.*
[13] See, Affidavits of Scott Ingram, Vincent O'Reilly, Ty Schommer and Lynn Soiseth, at ¶4; see also, Affidavit of Pam Parker, at ¶3.
[14] *Id.*
[15] *Id.*

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

continue their customary practice of sending greeting to their clients, as well as send announcements that they were joining a new firm.[16]

Other than the ACT Database Contact Manager, Defendants returned all other information from the ACT software to Morgan Stanley upon resigning. Each Defendant testified:

> With the permission of Morgan Stanley, my assistant Pam Parker retained ACT software at her home computer. Clark Rush, Morgan Stanley's former Branch Manager, was aware of this practice and never objected. Upon resigning, I instructed Ms. Parker to make a copy of the ACT files onto a flash drive and delete the information from her computer. Ms. Parker did create such a flash drive and deleted the ACT software from her computer. She provided the disk to counsel. It is my understanding that the flash drive has been turned over to Morgan Stanley's counsel.[17]

Likewise, Parker testified that she "put the flash drive containing the most recent back up... into a sealed manila envelope explaining the contents so that it could be delivered" to Defendants' counsel.[18] Consistent with this testimony, Defendants' counsel has returned the flash disk to Morgan Stanley's counsel.[19]

Contrary to Morgan Stanley's assertions, Defendants did not announce to any of their clients that they were leaving Morgan Stanley prior to resignation.[20] Defendants did contact certain of their former clients after resigning.[21] However, the Defendants consider their communications professional courtesy rather than "solicitation" as charged by

---

[16] Id.
[17] Id., at ¶5.
[18] Affidavit of Pam Parker, at ¶4.
[19] See, **Exhibit 1**, Letter from Nault to Jones.
[20] See, Affidavits of Scott Ingram, Vincent O'Reilly, Ty Schommer and Lynn Soiseth, at ¶6.
[21] Id., at ¶7.

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

Morgan Stanley.[22] Defendants have worked with their clients for a number of years, (even decades for certain Defendants.)[23] Contrary to Morgan Stanley's assertions, Defendants were not given these clients by Morgan Stanley, rather Defendants cultivated these clients through their own hard work.[24] Defendants have testified that less than 5% of their business was the result of referrals from Morgan Stanley, cal-ins or walk-ins.[25] Defendants deemed that the least they could do is let their clients know they were changing firms.

Defendants' decision to send announcements to their clients was fueled by the deceptive business practices employed by Morgan Stanley. Defendants were present at Morgan Stanley in the fall of 2005 when five Financial Advisors, Charles Adams, Jeffrey Head, Tamara Head, Michael Speyerer and Keith Rivera ("Advisors"), resigned from Morgan Stanley and joined another Anchorage office.[26] Approximately 4 days after the Advisors had resigned, a meeting was called at the Anchorage office of Morgan Stanley at which all Financial Advisors present were directed to contact clients formerly serviced by the departing Advisors and strongly encourage them to keep their business at Morgan Stanley. Morgan Stanley instructed its financial advisors not to share the whereabouts of the departing Advisors or engage in conversations with regards to their departure.[27] Ty Schommer testified:

> We were specifically instructed not to provide contact information for the departing Advisors to their clients, even if the clients asked how to get in touch with the particular Advisor with whom the client had been working. We were instructed by Morgan Stanley at that time to tell inquiring clients that we did not know what happened to the Advisors that had left Morgan Stanley or how to

---

[22] *Id.*
[23] *Id.*
[24] *Id.*, at ¶8.
[25] See, Affidavits of Scott Ingram, Vincent O'Reilly, and Ty Schommer, at ¶8.
[26] See, Affidavit of Ty Schommer, at ¶¶12-16.
[27] *Id.*, at ¶12.

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

> get in touch with them even though it was well known that they
> had join the Anchorage UBS office. All of the Defendants named
> in the present lawsuit were directed to attend the meeting described
> herein.[28]

Morgan Stanley went so far as to issue a voicemail to all of its employees instructing them

not to inform clients the whereabouts or contact information of the departing Advisors.[29]

This business practice weighed heavily in Defendants' decision to send announcements to

their clients.[30]

It turns out the Defendants' fears were valid. On June 5, 2006, one of Vincent

O'Reilly's clients called Morgan Stanley.[31] He testified:

> When the receptionist answered, I asked if I could speak to
> Mr. O'Reilly. The receptionist told me words to the effect
> that "he no longer works here." I asked where he worked.
> The receptionist told me words to the effect that "I do not
> know and I am not allowed to give out that information."
> She then asked me what my account number was, and stated
> that she would transfer me to my new Morgan Stanley
> financial advisor. I said no thanks and contacted Mr.
> O'Reilly on his cell phone.[32]

Finally, Defendants left Morgan Stanley for philosophical differences as to how

one should service clientele, as well as due to their fear Morgan Stanley will significantly

downsize or eliminate its Fairbanks operations, where a significant portion of Defendants'

clients are serviced.[33] Defendants were not paid a signing bonus or otherwise compensated

---

[28] *Id*., at ¶13.

[29] *Id*., at ¶14.

[30] *Id*., at ¶¶15-16.

[31] See, Affidavit of Timothy A. Lovely, at ¶2.

[32] *Id.*

[33] See, Affidavits of Scott Ingram, Vincent O'Reilly, Ty Schommer and Lynn Soiseth, at ¶10.

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY

for joining A.G. Edwards.[34] Rather, they took a significant risk in moving to A.G. Edwards without compensation because there is no assurance that their clients will follow.[35]

## IV.    **ARGUMENT**

Morgan Stanley's motion for injunctive relief against Defendants is inappropriate and should be denied. To obtain a preliminary injunction, Morgan Stanley must show either (1) "a likelihood of success on the merits and the possibility of irreparable injury" or (2) "the existence of serious questions going to the merits and the balance of hardships tipping in [Morgan Stanley's] favor."[36] "These two alternatives represent extremes of a single continuum, rather than two separate tests. Thus, the greater the relative hardship to [Morgan Stanley], the less probability of success must be shown."[37] A preliminary injunction should not issue when the facts are vigorously disputed.[38] Even where a contract allows for the issuance of a temporary restraining order pending arbitration, the plaintiff must still plead and prove all of the elements necessary to obtain injunctive relief.[39]

In this case, Morgan Stanley has not established the requisite elements for injunctive relief. As set forth in detail below, Morgan Stanley is not likely to succeed in arbitration before the NASD, where the merits of this dispute will be determined. Morgan

---

[34] *Id.*, at ¶9.

[35] *Id.*

[36] *Gilder v. PGA Tour, Inc.,* 936 F.2d 417, 422 (9th Cir. 1991); see also, *State v. Metcalf*, 110 P.3d 976 (Alaska 2005).

[37] *Walczak v. EPL Prolong, Inc.,* 198 F.3d 725, 731 (9th Cir. 1999) (internal citation and quotation marks omitted)

[38] *Dymo Industries, Inc. v. Tapewriter, Inc.,* 326 F.2d 141, 143 (9th Cir. 1964).

[39] See, *e.g.*, *Kemlon Products and Dev. Co. v. U.S.*, 683 F.2d 1315, 1321 (5th Cir. 1981) (denying injunctive relief for failure to allege or prove facts indicating entitlement to such relief); *Cordis Corp. v. Prooslin*, 482 So.2d 486 (Fla. App. 3rd DCA 1986); *ACS Computer Services, Inc. v. Rodriqitez*, 592 So.2d 801 (Fla. 4th DCA 1992) (requiring moving to plead and prove irreparable injury); *Lovell Farms, Inc. v. Levy, 641 So.2d 103 (Fla. 3rd DCA 1994) (movant must plead and prove the improper use of trade secrets).*

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

Stanley will not prevail on its trade secrets claim because clients' phone numbers and addresses are not confidential information, nor do they constitute a trade secret. Moreover, Morgan Stanley does not take steps to maintain the secrecy of its clients' contact information. Thus Defendants' use of such information cannot constitute a violation of the Alaska Trade Secrets Act.

Morgan Stanley will not prevail on their contract claims either. NASD arbitration panel decisions consistently recognize that a client's ability to freely choose a financial advisor is paramount to restrictive covenants imposed by brokerage houses. Moreover, Defendants stand in a professional fiduciary relationship with their clients. Defendants' use of limited contact information to personally advise their clients of the decision to leave Morgan Stanley and join another firm is not a breach of a non-solicitation agreement.

Another fatal flaw to Morgan Stanley's motion is that the order it seeks relief beyond the scope of the contractual provisions on which it is based.  Morgan Stanley is attempting to expand the non-solicitation provisions in the Defendants' respective employment agreements into a prohibition on a restriction on the clients' right to choose his or her financial advisor.  If this is indeed the intended scope of the proposed order, Morgan Stanley is asking the Court to decide who these clients must use for financial advice. This is not an appropriate role for the Court.

The motion for injunctive relief must also be denied because Morgan Stanley has not demonstrated the possibility of irreparable injury. Any harm to Morgan Stanley may be adequately redressed in arbitration with money damages.

Finally, this is not a case where the existence of "serious questions going to the merits" requires the court preserve the status quo pending the arbitration. The status quo that Morgan Stanley seeks does not preserve any equilibrium between the parties; rather Morgan Stanley wants to impose an artificial status which benefits Morgan Stanley by restricting the ability of clients to choose to do business with the Defendants. This is a

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

thinly-veiled attempt to gain competitive advantage and a clear violation of the NASD rules. The balance of hardships in this case tips strongly against the entry of any injunction which would preclude or limit the ability of Defendants to continue to provide financial advice and services to their clients.

### A.      Morgan Stanley Is Not Likely To Succeed On The Merits

#### 1.      NASD arbitration decisions do not support injunctive relief

To determine the likelihood of success on the merits sufficient to issue a temporary restraining order, the Court should first look to the results in similar cases decided by NASD arbitration, where Morgan Stanley's claims will be decided.[40] NASD rulings demonstrate that firms in Morgan Stanley's position are usually not successful on the merits in obtaining a permanent injunction or damages against former financial advisors. The primary tenet of NASD rulings is that client choice militates against the imposition of a TRO which effectively stifles a client's ability to obtain advice from the financial advisor of their choice.

On April 7, 2004, a NASD arbitration panel issued a decision which dissolved the temporary restraining order and preliminary injunction issued by the U.S. District Court, Eastern District of Virginia in the matter of *Smith Barney Division of Citigroup Global Markets, Inc. (f/k/a Solomon Smith Barney) v. Stephens et al.*[41] The panel expressly noted the following basis for denying Smith Barney's request for permanent injunctive relief:

---

[40] In support of its motion for a TRO, Morgan Stanley has cited authority primarily from U.S. District Courts in the State of Washington, or cases not even involving securities dealers. This is not the proper authority to turn to for guidance. Since the NASD will be deciding this matter, precedent from the NASD must be used to determine whether Morgan Stanley will prevail on the merits.

[41] *Exhibit 2,* NASD Order on Request for Permanent Injunction dated April 7, 2004, Arbitration Between: *Smith Barney Division of Citigroup Global Markets, Inc. (f/k/a Solomon Smith Barney) v. Stephens et al.*, Case No. 04-1781.

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

> Recognizing the importance of client choice in the selection of financial consultants, and because the panel concludes that Smith Barney has adequate remedies at law, Smith Barney's request that Stephens, Adams and Kernus be enjoined from soliciting or contacting Smith Barney's clients is DENIED.[42]

The NASD consistently dissolves TROs in circumstances such as the present dispute.[43]

*Merrill Lynch, Pierce, Fenner & Smith v. Stark et al.*, a NASD arbitration panel issued an order denying Merrill Lynch's request for a permanent injunction. The panel made the following findings:

> 1.    Customer rights are of primary importance and [the panel] is concerned customers are, or may be, subject to harm due to this dispute;
>
> 2.    The fiduciary duties owed by the parties to the customers are superior to any duties owed by employees to the former employer;
>
> 3.    The customers have a paramount right to be advised of the move by their broker and, that this right includes receiving personal contact from their broker;
>
> 4.    The customers have the right to be informed that they decide whether to remain with Merrill Lynch or to transfer their account;
>
> 5.    Customer names and addresses and telephone numbers are not confidential.[44]

---

[42] Id.
[43] See, *Exhibit 3*, *Merrill Lynch, Pierce, Fenner & Smith v. Stark et al.*, NASD Case No. 02-05187; *Exhibit 4*, *Merrill Lynch, Pierce, Fenner & Smith v. Sherwin & Sobin*, NASD Case No. 02-05989; *Exhibit 5*, *Merrill Lynch, Pierce, Fenner & Smith v. Atkins & Marshall*, NASD Case No. 03-04038.
[44] *Exhibit 3*, *Merrill Lynch, Pierce, Fenner & Smith v. Stark et al.*, NASD Case No. 02-05187.

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

Courts likewise recognize that before the NASD, a restraining order will not be held up in circumstances such as those in this case. In *Morgan Stanley DW Inc. v. Frisby*, the court stated:

> [a]s long as the departing broker obeys the unwritten rules against taking original records or soliciting clients before resigning, the brokerage firms have a long record of losing arbitration proceedings.[45]

A review of these decisions makes it evident that Morgan Stanley is not likely to succeed on the merits before an arbitration panel comprised of industry representatives, who recognize that clients' rights are paramount and who are familiar with the standard practice and procedures of brokers moving freely from one brokerage house to another.

### 2.    There Has Been No Violation of the Trade Secrets Act

To obtain an injunction based on an alleged violation of the Alaska Trade Secrets Act, Morgan Stanley must establish the existence of a trade secret and the misappropriation and use of that trade secret.[46] Specifically, Morgan Stanley must prove (among other elements): (1) Defendants are in possession of information which "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use";[47] and (2) Morgan Stanley took efforts "reasonable under the circumstances to maintain its secrecy."[48] Morgan Stanley cannot obtain trade secrets protection simply by characterizing client's contact information as a trade secret.

---

[45] 116 F.Supp.2d 1371, 1380 (N.D. Ga. 2001)
[46] <u>See</u>, AS 45.50.910 *et seq.*
[47] AS 45.50.940(3)(A).
[48] AS 45.50.940(3)(B)

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY

It is widely recognized that a customer list is not proprietary or a protected trade secret unless the list contains information not generally known or readily available from public sources, or the list was the product of great expense or effort by the company.[49] As stated by the court in one case involving Morgan Stanley:

> A review of the standard and customary practice of the securities industry, as well as of Morgan Stanley's own corporate practice, demonstrates that the clients and client information at issue here are not proprietary to Morgan Stanley, nor are they sufficiently "secret" for trade secret protection. When Morgan Stanley hires brokers from its competitors, it takes the completely opposite position as it has in the present case. Morgan Stanley vigorously defends the same hiring practices it challenges here and admits that the client information at issue is not a trade secret.[50]

---

[49] See, e.g., *Merrill Lynch, Pierce Fenner & Smith, Inc. v. Coodson*, 820 F.Supp. 1128, 1131 (S.D. Ind. 1933) (noting that the broker's professional and personal notes were not part of the brokerage firm's records, not part of its property and therefore could not be subject to an injunction); *Merrill Lynch v. E.F. Hutton, Inc.*, 403 F.Supp. 336, 345 (E.D. Mich. 1975) (denying a motion for preliminary injunction and allowing a former broker to utilize customer information which he himself had compiled); *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407 11th Cir. 1998).

[50] *Morgan Stanley DW Inc. v. Frisby*, 163 F.Supp.2d 1371, 1378 (N.D. Ga. 2001). The court in *Frisby* relied on testimony from a Morgan Stanley witness establishing: "It is the normal practice within the brokerage industry for account executives to move freely from one brokerage concern to another. Hardly a month goes by when we do not lose account executives to our competitors and scarcely a month goes by when we do not hire someone away from the competition. It is the way that business is done in our industry. Moreover, it also flies in the face of the custom and practice of the brokerage industry to suggest that when an account executive moves from one brokerage concern to another he is not entitled to contact his former clients after he switches firms. Again the practice in the industry is directly contrary to what the plaintiffs suggest: in practice, when an account executive moves from one brokerage concern to another, he is entitled and expected to make use of the names of the customers that he served while employed by his prior brokerage firm."

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

In *American Express Financial Advisors, Inc. v. Andrew G. Hahn et al.,* the U.S. District Court for the District of Colorado issued an order denying a motion for preliminary injunction pending NASD arbitration.[51]  In that case, five financial planners employed by American Express resigned and began working for a competing firm.  At issue was whether client information, including names, addresses and telephone numbers, constituted trade secrets.  The Court ruled that this type of customer information does not meet the statutory definition of "trade secret" "because it obviously is known to the individual investors and is also generally known to the insurance companies and mutual funds in which investments are made."[52]

Morgan Stanley will not be able to establish a trade secrets violation in this dispute. The only information retained by Defendants in this matter is the information contained in the ACT Database Contact Manager – client names, addresses and phone numbers, as well as Defendants' personal notes. First, the client's contact information is readily available to the public. Moreover, this information was not even compiled or maintained by Morgan Stanley. Rather, it was information stored by Defendants' assistant on her home computer with software purchased by Defendants. Finally, the notes contained in the ACT Database Contact Manager do not even belong to Morgan Stanley, but rather belong to Defendants.[53]

Morgan Stanley took absolutely no efforts to keep this information confidential. To the contrary, Morgan Stanley knew full well that Defendants kept this information on their assistant's home computer, and did not object to Defendants' practice until this dispute

---

[51] See, ***Exhibit 6***, *American Express Financial Advisors, Inc. v. Andrew G. Hahn et al.,* Case No. 98-M-2046.

[52] Id. The definition of trade secret in the *Hahn* decision is identical to the definition in Alaska Statute

[53] Defendants have many valid reasons for keeping their personal notes. Of primary concern to Defendants is recording requests or comments made by the clients, as Defendants would need such information in the event they have a dispute with their clients.

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

arose. Since Morgan Stanley did not treat the client information as proprietary, secret or confidential, it cannot simply acquire protection under the Trade Secrets Act by designating it as such now.

### 3.    Client's Rights Are Paramount To Non-Compete Agreements

While Alaska law recognizes the enforceability to restrictive covenants,[54] it does not have any case law addressing non- competition agreements in the realm of securities dealers. As such, the court should look to NASD arbitration decision addressing the enforceability of restrictive covenants. NASD arbitration panels consistently place client's choice above the ability of a brokerage firm to obtain a competitive advantage through restrictive covenants.[55]

### B.    Morgan Stanley Does Not Face Irreparable Injury So There is No Need to Maintain the Status Quo

Morgan Stanley has not demonstrated the possibility of irreparable injury. In the unlikely event that Morgan Stanley could establish liability against Defendants, monetary damages are sufficient because income derived from clients is easily tracked. As noted by the court in *Frisby*:

> The securities industry is highly regulated. Each individual transaction is monitored electronically. Every customer transfer from Morgan Stanley is documented. Every executed trade is recorded. Every dollar earned in fees by Defendants Frisby and Lovell doing business with those customers that Morgan Stanley considers its own can be

---

[54] See, *Metcalf Investments Inc. v. Garrison*, 919 P.2d 1356 (Alaska 1996).
[55] ***Exhibit 2***, NASD Order on Request for Permanent Injunction dated April 7, 2004, Arbitration Between: *Smith Barney Division of Citigroup Global Markets, Inc. (f/k/a Solomon Smith Barney) v. Stephens et al.*, Case No. 04-1781; ***Exhibit 3***, *Merrill Lynch, Pierce, Fenner & Smith v. Stark et al.*, NASD Case No. 02-05187; ***Exhibit 4***, *Merrill Lynch, Pierce, Fenner & Smith v. Sherwin & Sobin*, NASD Case No. 02-05989; ***Exhibit 5***, *Merrill Lynch, Pierce, Fenner & Smith v. Atkins & Marshall,* NASD Case No. 03-04038.

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5ᵗʰ Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 · Fax (907) 279-5358
www.bankston.to

traced precisely. Any loss Morgan Stanley might suffer as a result of Defendants' departure is calculable.[56]

Courts routinely find that monetary damages are easily calculable in cases such as the present.[57] As stated by the court in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. E.F. Hutton & Co.*:

> As to the assertion of lost profits, it is clear that plaintiff has adequate legal recourse. Its claim that the loss of primary commissions is ascertainable is conclusory and does not comport with the prevailing concepts of damages. It alleged loss of secondary customer referrals would, if proven, be calculable.[58]

As noted by the court in *American Express Financial Advisors, Inc. v. Hahn* in denying a TRO:

> Injunctive relief is not an appropriate here because the plaintiff has an adequate remedy at law to recover damages for breach of contract available in the NASD arbitration proceeding . . . There are adequate records from which a loss in revenues and fees from investment products, financial planning fees and brokerage fees can be calculated for those investors who switched from the plaintiffs' proprietary products and other investments as a result of the efforts of the defendants to induce such actions upon their decision to leave their affiliation with the plaintiff.[59]

---

[56] 163 F.Supp.2d at 1376.

[57] See, *Merrill Lynch, Pierce, Fenner & Smith Inc v. Bennert*, 980 F.Supp. 73, 75 (D.Me.1997) (damages caused by the exodus of multiple brokers to a competing brokerage firm could be calculated by evidence of past history of the earnings on accounts and expert testimony); see also, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Bishop*, 839 F.Supp. 68, 74 (holding that "[c]onjecture about the possibility of difficulties with damage computation is inadequate to support an injunction before trial.")

[58] 403 F.Supp. 336, 343(E.D. Mich 1975).

[59] **Exhibit 6**, *American Express Financial Advisors, Inc. v. Andrew G. Hahn et al.*, Case No. 98-M-2046.

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY

As these cases make clear, Morgan Stanley has an adequate remedy at law in the unlikely event that it prevails on its claims at the NASD hearing because the damages it seeks are easily calculable. As such, a TRO is an inappropriate remedy.

> **C.    There Are No "Serious Questions going To The Merits", And The Balance Of Hardships Weighs Against The Issuance Of A TRO**

As explained above, the departure of financial advisors in circumstances such as the present is a commonplace occurrence, and the law applicable to this scenario is well-settled. As such, Morgan Stanley cannot plausibly contend that there are serious questions going to the merits of the case.

Moreover, the balance of hardships strongly militates against a TRO. Morgan Stanley is one of the largest financial services conglomerates in the world. Morgan Stanley will survive the departure of some of its clients in its Anchorage offices if a TRO is not issued. As explained above, to the extent Morgan Stanley can prove claims against Defendants, it can be fairly compensated with money damages.

Defendants, on the other hand, are not a vastly wealthy financial institution. They are financial advisors who depend on business generated by their clients to earn a living. Issuance of a TRO will seriously impede Defendants' ability to service their clients and earn a living doing so.

Moreover, issuance of a TRO will create a hardship for the clients seeking financial advice from the advisor of their choice. As stated in *Prudential Securities v. Plunkett*:

> A broker-client relationship, like a lawyer-client or doctor-patient relationship, is a personal relationship dependent on personal trust. Clients should be free to deal with the broker of their choosing and not subjected to the turnover of their accounts to brokers associated with the firm but unfamiliar

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER AND CROSS MOTION TO STRIKE HEARSAY

*Morgan Stanley D.W., Inc. v. Schommer et al..*, Case No. 3:06-cv-00135 [TMB]]    Page 22 of 25
A4134\01\OPPtro

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

with the client, unless the client gives informed consent o the turnover.[60]

The only parties that will truly suffer a hardship if a TRO is issued are Defendants and their clients. As such, the balance of hardships weighs strongly against the issuance of a TRO

**D.    Morgan Stanley is Not Entitled to Equitable Relief**

It is well established that an injunction is an equitable remedy.[61] As such, courts "should not grant the extraordinary relief of a preliminary injunction to claimants who have acted in bad faith."[62]

Morgan Stanley request for injunctive relief is barred by its own conduct. The NASD has adopted Interpretive Material 2110-7, which provides that it is inconsistent with just and equitable principles of trade for a member or person associated with a member to interfere with a customer's request to transfer his or her account in connection with the change in employment of the customer's registered representative.[63]

Morgan Stanley has blatantly violated the NASD regulations and acted inequitably by instructing its advisors and employees to mislead clients seeking information to transfer assets to new brokerage firms. Morgan Stanley does not have clean hands, and thus is not entitled to equitable relief.

Moreover, Morgan Stanley engages the acts is seeks to enjoin. As noted by the court in *Frisby*:

> Morgan Stanley is estopped from seeking a restraining order against competitive conduct which it admits to engaging in. As demonstrated by Defendants' citation to Morgan Stanley's

---

[60] 8 F.Supp.2d 514, 520 (E.D. Va. 1998).
[61] *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311, 102 S.Ct. 1978, 1803 (1982).
[62] R.Haig, Business and Commercial Litigation in Federal Courts, § 13.2 at p.816 (1998).
[63] See, ***Exhibit 7***, NASD Notice to Members 02-07.

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

publicly filed pleadings, Morgan Stanley regularly hires brokers from competitors and, in so doing, engages in the very same practices that it challenges here. Defendants assert, and the Court agrees, that Morgan Stanley can not challenge similar conduct here because of its own unclean hands. O.C.G.A. § 23-1-10 ("He who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action"). In virtually identical circumstances, a court stated recently that, "[i]t is against public policy to allow Merrill Lynch to conduct its business in such a way as to gain benefits, while at the same time requiring its employees to meet a different industry standard." *Merrill Lynch v. Buchanan,* No.2000/8144 (Monroe County N.Y. September 18, 2000) (Exhibit H to Defendants' Brief in Opposition to Temporary Restraining Order); *see also, Salomon Smith Barney, Inc. v. Vockel,* 137 F.Supp.2d 599, 604 (E.D.Pa.2000). Morgan Stanley is estopped by its unclean hands from seeking equitable relief from this Court. Equity does not permit Morgan Stanley to enforce restrictive covenants against Defendants Frisby and Lovell when it actively recruits brokers from competitors and encourages them to retain and use copies of client records to solicit the transfer of client accounts from those competitors without regard to any agreements between the brokers and the competitor.[64]

## V.    **CONCLUSION**

Morgan Stanley has utterly failed to meet its burden of proof in petitioning for a TRO. Morgan Stanley has not proven that Defendants have solicited any clients, but rather put forth hearsay that should be stricken from the record. Moreover, Morgan Stanley has not proven that Defendants are in the possession of any confidential information or trade secrets. The only information Defendants retained was contained in their own personal

---

[64] 163 F.Supp.2d at 1380.

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY

BANKSTON GRONNING O'HARA, P.C.
Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

software –the ACT Database Contact Manager – which included the contact information for Defendants' clients, as well as Defendants' personal notes.

A TRO should not be granted because Morgan Stanley will not prevail before the NASD. Moreover, Morgan Stanley does not face irreparable harm because its alleged damages are readily calculable.

Finally, Morgan Stanley's own inequitable conduct should bar it from the relief it seeks. Morgan Stanley actively misleads Defendants' clients seeking contact information. Moreover, Morgan Stanley engages in the very same practices it seeks to enjoin.

Ultimately, Morgan Stanley's motion should be denied because it seeks to limit the clients' choice and ability to deal with whom they desire.

DATED this _____ day of June, 2006.

BANKSTON GRONNING O'HARA, PC
Attorneys for Defendants

By:    s/  William M. Bankston
       601 W. 5th Avenue, Suite 900
       Anchorage, Alaska 99501
       Phone: (907) 276-1711
       Fax: (907) 279-5358
       E-mail:  wbankston@bankston.to
       AK Bar #7111024

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2006, a copy of foregoing Opposition was served electronically and by hand delivery by noon upon:

Calvin R. Jones
Jones & Colver, LLC
1900 W. Benson Blvd., Suite 201
Anchorage, AK 99517

s/Charlene Vozar

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND CROSS MOTION TO STRIKE HEARSAY