COPY
Otto
FILED
UNITED STATES DISTRICT COURT
DENVER, COLO
MAY 24 1999
JAMES R. MANSPEAKER
                    CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Richard P. Matsch

Civil Action No.    98-M-2046

AMERICAN EXPRESS FINANCIAL ADVISORS, INC.,

    Plaintiff,

v.

ANDREW G. HAHN, JOANNE GIPPLE, THOMAS C. STEFANIAK, JAMES A. RENIG AND MICHAEL J. WILLIAMS,

    Defendants.

---

### FINDINGS, CONCLUSIONS AND ORDER
### DENYING MOTION FOR PRELIMINARY INJUNCTION

---

Claiming breaches of restrictive covenants contained in their contracts entered into by each of the five defendants with IDS Financial Services, Inc., ("IDS") predecessor to American Express Financial Advisors, Inc. ("AEFA"), the plaintiff seeks a preliminary injunction preventing each of the defendants from using information obtained while functioning as a personal financial planner, affiliated with AEFA, and from transacting business with clients obtained while working in that relationship. The defendants admit violating the terms of their agreement but claim that the applicable restrictions are not enforceable under either Colorado or Minnesota law because they are impermissible covenants not to compete. Both states have enacted the Uniform Trade Secrets Act. The agreements direct that Minnesota law should be applied but

Exhibit 6
Page 1 of 7    43
Case No.
                                EXHIBIT G
                                Page 1 of 7

there is no substantial difference between the laws of both states. Essentially, agreements not to compete are enforceable so long as they are reasonable, both temporally and geographically, and are designed to protect trade secrets. The primary disagreement in this case is over what constitutes trade secrets.

The complaint is only for a preliminary injunction to prevent irreparable harm to AEFA pending an NASD arbitration proceeding. No other relief is requested. The court's authority to issue such an injunction is recognized by Rule 10335 of the NASD Arbitration Code.

At the evidentiary hearing on the plaintiff's motion, the parties submitted 33 stipulations of facts which are adopted by this reference. Each of the defendants was required to sign the subject Financial Planner Agreement as a condition of their employment. Each began work with IDS as an employee during a training period. After the training period, each defendant became an independent contractor under the Financial Planner Agreement. The defendants voluntarily terminated their affiliation with AEFA on September 11, 1998, and each of them immediately thereafter became associated with Linsco\Private Ledger, a competitor of AEFA. Each of the defendants is now doing business with clients to whom they made sales and provided services while they were with the plaintiff. Some of these clients closed out previous accounts they had with the plaintiff and sold or redeemed some of their previously owned investments.

AEFA is a subsidiary of American Express Company, formed to continue the business of IDS Financial Services, Inc. ("IDS"), a company acquired by American

2

Exhibit 6
Page 2 of 7
Case No._____

EXHIBIT G
Page 2 of 7

Express. That business is a financial planning service for a wide variety of individual investors. These investments include life insurance, annuity contracts and mutual funds. They are referred to as "products." Some of them are proprietary and others are available in the open market. AEFA engages in marketing practices to generate investor interest and to establish new client relationships. It spends approximately $2.5 million annually on a lead generation program. Names and addresses of potential clients may be purchased by the individual financial planners who then contact those persons to develop their interests and to establish a client relationship. During their training employment period, the financial planners receive training and advice in developing clients and in formulating investment plans for them, depending on their resources, suitability for risk of loss, investment goals and particular interests. This financial planning is assisted by computer data bases and software owned by AEFA and made available to the planners as affiliated independent contractors.

The plaintiff also provides support to the planners to assist them in identifying segments of the market for special targeting and engages in the development of financial planning seminars. Such seminars include programs at the offices of major corporations, giving the planners access to their employees. Additionally, the plaintiff develops investment products for sale to the planners' clients.

AEFA stresses the confidentiality of all client information and issues to each planner a report, called the Decile Report, consisting of a list of their clients, their gross business done, trends of the planners' practices for the clients to whom they have provided financial planning and investment advisory services together with the

addresses and telephone numbers of the clients, all recorded on a database.

The plaintiff maintains that these reports and all other client information constitute trade secrets within the meaning of the statutory authority for their restrictive covenants. There are courts which have agreed with that premise. This court does not. A distinction must be made between the information and the methodology used in the development, maintenance and transmission of the information. Confidentiality of financial matters required by the Privacy Act and by NASD regulations do not equate with trade secret information. The statutory definition of a trade secret under Minnesota law, Minn.Stat. § 325C.01 subd. 5 provides as follows:

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> > (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
> >
> > (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

The customer information itself does not meet this definition because it obviously is known to the individual investors and is also generally known to the insurance companies and mutual funds in which investments are made. What is protectable is the manner in which this information has been collected and collated for the use of the planners. Thus, the information in the Decile Reports in itself may not be a trade secret but the collection of the information and its transmission through this report can be so classified.

4

Exhibit 6
Page 4 of 7
Case No.

EXHIBIT G
Page 4 of 7

The importance of this distinction relates to the injunctive relief requested. To grant the plaintiff's motion for preliminary injunction would be to deny those persons who are now clients of each of the defendants, some of whom testified at the hearing before this court, the opportunity to continue participating in a trusting advisory relationship. What has been revealed in the testimony is that these defendants have developed some expertise in financial planning and advisory services while they worked for and were associated with the plaintiff and its predecessor but that most of their client relationships have been developed through the "natural market," consisting of friends, relatives and referrals.

Injunctive relief is not appropriate here because the plaintiff has an adequate remedy at law to recover damages for breach of contract available in the NASD arbitration proceeding. It is also made clear by the testimony and the evidence presented to this court at the hearing on the motion for preliminary injunction. There are adequate records from which a loss in revenues and fees from investment products, financial planning fees and brokerage fees can be calculated for those investors who switched from the plaintiffs' proprietary products and other investments as a result of the efforts of the defendants to induce such actions upon their decision to leave their affiliation with the plaintiff.

What the evidence shows is that the defendants have breached enforceable contracts but that the equitable remedy of injunctive relief is inappropriate. Since that is the only relief requested, it is

ORDERED that the motion for preliminary injunction is denied and this civil

5

Exhibit 6
Page 5 of 7
Case No._____

EXHIBIT G
Page 5 of 7

action is dismissed. No costs are awarded.

DATED: May 24th, 1999.

BY THE COURT:

*Richard P. Matsch*

Richard P. Matsch, Chief Judge

6

Exhibit 6
Page 6 of 7
Case No. _____

EXHIBIT G
Page 6 of 7

Case Number: 98-M-2046

I certify that I mailed a copy of the attached to the following:

Eliott R. Good
Chorpenning, Good, & Mancuso
77 East Nationwide Blvd.
Columbus, Ohio 43215

Michael J. Zaretsky
1135 Clifton Avenue
Clifton, NJ 07017

James E. Gigax
Bloom Murr & Accomazzo, PC
410 Seventeenth St., Suite 2400
Denver, Colorado 80202-4402

Dennis A. Graham
Karen E. Leather
Clanahan, Tanner, Downing, and Knowlton PC
730 17th St. #500
Denver, Colorado 80202

Barbara W. Gall
Sherman & Howard
D.C. Box 12

Dated: 5/24/99

By: _____
Jane Trexler, Secretary

Exhibit 6
Page 7 of 7
Case No. _____

EXHIBIT G
Page 7 of 7