William M. Bankston, Esq.
Barbra Z. Nault, Esq.
Bankston Gronning O'Hara, P.C.
601 West 5th Avenue, Suite 900
Anchorage, Alaska 99501
(907) 276-1711 (telephone)
(907) 279-5358 (fax)
wbankston@bankston.to

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

AT ANCHORAGE

| | |
|---|---|
| MORGAN STANLEY DW INC., a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> SCOTT INGRIM, VINCE O'REILLY, TY SCHOMMER, and LYNN SOISETH, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 3:06- cv-00135[TMB] ) |

**AFFIDAVIT OF TY A. SCHOMMER**

STATE OF ALASKA      )
                     ) ss:
THIRD JUDICIAL DISTRICT  )

Ty A. Schommer, being first duly sworn upon oath, deposes and says:

1. My job titles at Morgan Stanley D.W. Inc. ("Morgan Stanley") were Vice President and Wealth Advisor.

[Left margin: BANKSTON GRONNING O'HARA, P.C. — Attorneys at Law — 601 W. 5th Avenue, Suite 900 — Anchorage, Alaska 99501 — Tel. (907) 276-1711 - Fax (907) 279-5358 — www.bankston.to]

2. I intended to resign from Morgan Stanley on May 26, 2006. My resignation letter is dated for May 26, 2006. However, as I was cleaning out my office on the evening of May 25, 2006, I encountered Morgan Stanley's current Vice President and Branch Manager, Harold Pierce. When Mr. Pierce inquired as to what I was doing, I indicated that I intended to resign and gave him my resignation letter. I requested Mr. Pierce to look through the boxes which I had packed and perform a check out. He gave me a verbal authorization to take the contents of the boxes. The boxes did not contain any confidential information belonging to Morgan Stanley. Rather, the boxes contained my personal belongings. Mr. Pierce should know this as he inspected the contents.

3. I did not take any confidential information from Morgan Stanley. Upon resignation, I left my copy of my contact manager software, which contained all client notes, addresses and contact info (commonly referred to as "ACT" software) for Morgan Stanley.

4. The only information I retained was data disks related to the ACT Database Contact Manager, which I purchased with my own funds at the encouragement of Morgan Stanley's upper management. This database contains information I personally compiled during my years at Morgan Stanley – the names of my clients, their address and phone numbers, and information I personally compiled about the clients. None of this information was downloaded from files at Morgan Stanley. I retained this information so that I could continue my customary practice of sending greeting cards to my clients, as well as send announcements that I was joining a new firm.

5. With the permission of Morgan Stanley, my assistant Pam Parker retained ACT software at her home computer. Clark Rush, Morgan Stanley's former Branch Manager, was aware of this practice and never objected. Upon resigning, I instructed Ms. Parker to make a copy of the ACT files onto a flash drive and delete the

BANKSTON GRONNING O'HARA, P.C.
Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

information from her computer. Ms. Parker did create such a flash drive and deleted the ACT software from her computer. She provided the disk to counsel. It is my understanding that the flash drive has been turned over to Morgan Stanley's counsel.

6.  I did not tell any clients that I intended to leave Morgan Stanley prior to my resignation. I did not accept a position with A.G. Edwards & Sons, Inc. until after I had resigned from Morgan Stanley.

7.  I have notified my clients of my current employment with A.G. Edwards & Sons, Inc. ("A.G. Edwards"). I do not consider this solicitation, but rather a professional courtesy. I have worked with my clientele for a number of years and feel obligated to let them know that I have changed firms.

8.  I wholeheartedly disagree with Morgan Stanley's intimations that Morgan Stanley gave me my book of business. The vast majority of my clientele consists of (a) people I knew through existing contacts before I even joined Morgan Stanley or (b) clients I have obtained through my own efforts with little assistance from Morgan Stanley. Although some of my clientele were assigned to me as of a result of departing Financial Advisors or call-ins/walk-ins, this type of clientele constitutes 5% or less of my existing clients. Most of the people I deal with are either my personal clients or the clients of the partners I now work with that were obtained by their own individual efforts, as opposed to referrals from Morgan Stanley.

9.  I was contacted by A.G. Edwards – I did not contact them. I was not paid a bonus or otherwise compensated by A.G. Edwards for joining its firm. Actually, I am taking a significant risk in moving to A.G. Edwards without compensation because there is no assurance that my clients will follow.

10. I decided to leave Morgan Stanley for a number of reasons. Morgan Stanley continues to move its primary focus to more exclusively serve the high net worth and ultra high net worth clientele. This is an important business segment for sure, but a significant portion of my practice lies outside of this demographic. Morgan

BANKSTON GRONNING O'HARA, P.C.
Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

Stanley continues to voice more loudly and more insistently its own corporate agenda in this regard. To the contrary, A.G. Edwards looks to support me as opposed to lead me. Moreover, Morgan Stanley's footprint in Fairbanks continues to wane to the point where I am concerned that its offices there may close. A third of the business I manage is located in Fairbanks. In summary, locally and nationally Morgan Stanley has become a very difficult place to conduct business as it is insensitive to the business needs of its Financial Advisors and the practical needs of its clients.

11. I was employed by Morgan Stanley in the fall of 2005 when five Financial Advisors, Charles Adams, Jeffrey Head, Tamara Head, Michael Speyerer and Keith Rivera ("Advisors"), resigned from Morgan Stanley and joined another Anchorage office.

12. Approximately 4 days after it became known that the Advisors had resigned, a meeting was called at the Anchorage office of Morgan Stanley at which all Financial Advisors present were directed to contact clients formerly serviced by the departing Advisors and strongly encourage them to keep their business at Morgan Stanley. In particular we were instructed not to share the whereabouts of the departing Advisors or engage in conversations with regards to their departure.

13. We were specifically instructed not to provide contact information for the departing Advisors to their clients, even if the clients asked how to get in touch with the particular Advisor with whom the client had been working. We were instructed by Morgan Stanley at that time to tell inquiring clients that we did not know what happened to the Advisors that had left Morgan Stanley or how to get in touch with them even though it was well known that they had join the Anchorage UBS office. All of the Defendants named in the present lawsuit were directed to attend the meeting described herein.

BANKSTON GRONNING O'HARA, P.C.
Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

14. Moreover, Morgan Stanley issued a voicemail to all of its employees instructing them not to inform clients the whereabouts or contact information of the departing Advisors.

15. When I discussed the prospect of leaving Morgan Stanley with the other Defendants in the present lawsuit, all Defendants were concerned over the prospect that our own clients would be denied information about how to contact us by Morgan Stanley in accordance with Morgan Stanley's past practice. We agreed that this was unacceptable because of the long-standing relationships we have with the vast majority of our clients and because of our fiduciary responsibilities to those clients.

16. Our experience with Morgan Stanley's past practice of denying contact information for former advisors to clients, even when those clients specifically ask for the information, was a significant motivating factor in our decision to personally provide our clients with notice of our decision to leave Morgan Stanley and join A.G. Edwards.

BANKSTON GRONNING O'HARA, P.C.
Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

Affidavit of Ty A. Schommer
*Morgan Staonley DW Inc. v. Schommer, et al.*, Case No. 3:06-cv-00135 [TMB]
A4134\01\AFFschommer1

Page 5 of 6

DATED: 6/8/06

_____
Ty Schommer

SUBSCRIBED AND SWORN to before me this 8th day of June, 2006.



_____
Notary Public in and for Alaska
My commission expires: 11/4/2006

BANKSTON GRONNING O'HARA, P.C.
Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to