Calvin R. Jones
Jones & Colver, LLC
1900 W Benson Blvd Suite 201
Anchorage, AK 99517
(907) 272-6511

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

MORGAN STANLEY DW INC., )
a Delaware corporation )
                                    )
         Plaintiff, )
                                    )
     vs. )
                                    )
TY A. SCHOMMER, LYNN )
ANTHONY SOISETH, SCOTT )
DAVID INGRIM, and JAMES )
VINCENT O'REILLY )
                                    )
         Defendants )
_____)

Case No. 3:06-CV-00135 [TMB]

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

I.     **INTRODUCTION**

The evidence submitted by Morgan Stanley DW Inc. ("Morgan Stanley") satisfactorily supports its Motion for a Temporary Restraining Order. While Defendants do their best to distract the Court, the key, undeniable facts supporting Morgan Stanley's motion remain that: 1) Defendants do not dispute that they had confidential Morgan Stanley client information after they resigned; 2) Defendants do not dispute that they provided Morgan Stanley confidential client information to their new employer for the sole purpose of soliciting Morgan Stanley clients; 3) Defendants do not dispute that they called Morgan Stanley clients; and 4) Defendants do not contest the enforceability of their employment agreements, which contain provisions prohibiting the distribution of the contact information of Morgan Stanley's clients and also

prohibit the Defendants from soliciting Morgan Stanley's clients. When all of the irrelevant contentions are stripped from Defendants' argument these key undisputed facts remain and there is no persuasive reason that the Court should not enter a Temporary Restraining Order in favor of Morgan Stanley.

II.  **MORGAN STANLEY'S EVIDENCE SUPPORTS ITS MOTION FOR A TEMPORARY RESTRAINING ORDER**

Defendants, while under a clear understanding that they violated the plain terms of their employment agreements, are desperately trying to divert the Court's attention from the facts of this case and raise issues regarding the admissibility of evidence. However, Defendants' arguments are misplaced. As explained below, the affidavits are sufficient to support Morgan Stanley's motion for a temporary restraining order. Regardless, the Defendants have made no argument that the Court should not consider the written solicitations of Morgan Stanley clients made by Defendants. Additionally, Defendants have not and cannot dispute that they sent written solicitations to Morgan Stanley's clients; that constitutes a clear and undeniable breach of their employment agreements.

"[T]he rules of evidence do not strictly apply to preliminary injunction proceedings." Houdini Inc. v. Goody Baskets LLC, 166 Fed. Appx. 946, 947 (9th Cir. 2006). "To establish a substantial likelihood of success on the merits sufficient to pass appellate review of a district court's grant of a preliminary injunction, the plaintiffs are only obligated to show 'a fair chance of success.'" Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv., 422 F.3d 782, 794 (9th Cir. 2005). "The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial." Flynt Distributing Co. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984). "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." Id. Moreover, the plain text of Fed. R. Civ. P. 65 (b) provides that a temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney where "it clearly appears from specific facts shown by affidavit … that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition."

The compelling testimony and exhibits accompanying Plaintiff's Motion for a Temporary Restraining Order more than satisfy its burden to the court that Plaintiffs have a "fair chance of success."

JONES & COLVER, LLC
Attorneys at Law
1900 West Benson Boulevard, Suite 201, Anchorage, Alaska 99517
Telephone (907) 272-6511

Accordingly, Defendants' transparent attempt to strike that which damages it the most is without merit. Consequently, the Court should strike Defendants' Motion to Strike Morgan Stanley's testimony. Regardless, as mentioned above, Defendants do not even attempt to persuade the Court that it should not consider the written solicitations submitted by Morgan Stanley, which, by themselves, are more than sufficient to support Morgan Stanley's Motion for a Temporary Restraining Order.

**III.    THE ISSUANCE OF INJUNCTIVE RELIEF IS PROPER**.

NASD Rule 10335 (1) specifically directs Morgan Stanley to seek injunctive relief from this Court. Any argument that this Court should first direct this motion for injunctive relief to arbitration is without merit.

Morgan Stanley is entitled to injunctive relief because it has demonstrated (i) a clear right to the relief being sought, (ii) the likelihood of immediate and irreparable harm which cannot be compensated by damages, (iii) that an injunction would operate to restore the parties to the status quo as it existed prior to the Defendants' wrongful conduct, and (iv) that greater injury will result from denial of the injunction than from its being granted. Nothing in Defendants' opposition can obfuscate that fact.

**a.    Morgan Stanley Has Demonstrated a Clear Right to Relief**.

Morgan Stanley's undisputed contractual right to relief is clearly set forth in the express language of the Defendants' employment agreements. The Defendants executed non-compete agreements, whereby they expressly agreed not to solicit Morgan Stanley's clients and that an injunction may issue to enforce the promises they made. Defendants further executed Distribution Agreements reaffirming their covenants not to misappropriate Morgan Stanley trade secrets or solicit the Morgan Stanley clients assigned, and to protect Morgan Stanley's confidential and proprietary information. Nowhere in its twenty-five page Opposition or in their Affidavits do the Defendants deny that they agreed to keep Morgan Stanley client information confidential or that they agreed not to solicit Morgan Stanley's clients after resignation from Morgan Stanley's employment.

Defendants spend a large portion of their brief arguing that NASD panels "usually" do not grant injunctive relief in similar cases. This is a false statement. Given more time, Morgan Stanley could provide the Court with many NASD orders that granted injunctive relief, but Morgan Stanley does not believe that

JONES & COLVER, LLC
Attorneys at Law
1900 West Benson Boulevard, Suite 201, Anchorage, Alaska 99517
Telephone (907) 272-6511

would particularly helpful to the Court. Each case rises and falls on its own merits.[1] Defendants' citation to five orders over the last seven years, none of which pertain to Morgan Stanley or A.G. Edwards & Sons, Inc. ("AGE"), is disingenuous. If NASD panels "usually" do not grant injunctive relief, why didn't AGE provide a single example where it was successful defending a similar case? Regardless, the test is whether Morgan Stanley has provided evidence to the Court that Defendants violated their employment Agreements. The solicitation letters by themselves are sufficient for the Court to grant the temporary restraining order and Defendants' arguments about NASD panels is misplaced and not relevant to the Court's decision.

### b. Morgan Stanley Will Suffer Irreparable Injury if Defendants and All Those Acting in Concert with them Are Not Enjoined.

If Defendants' conduct is permitted to continue until arbitration, Morgan Stanley will suffer irreparable injury consisting of the loss of goodwill and client confidentiality, a threat to office stability, and the infliction of incalculable damages.

First, immediate injunctive relief is necessary to protect Morgan Stanley's confidential customer list. Defendants admit they retained Morgan Stanley's customer list. (Defendants' Opposition, p. 9, "The Defendants retained this information.") Defendants admit to using Morgan Stanley's customer lists to send "announcements that they were joining a new firm." (Id., p. 10.) These so-called "announcements" were printed on AGE letterhead and included forms used to transfer assets to AGE, a clear solicitation of Morgan Stanley clients. Likewise, the Court should dismiss Defendants' self-serving assertions that they called Morgan Stanley clients as a "professional courtesy." The affidavits submitted by Morgan Stanley establish that the Defendants engaged in direct solicitation of Morgan Stanley clients. Even more telling, the solicitation letter sent by the Defendants to Morgan Stanley clients plainly states: "we will be calling you as soon as we can to provide other details and to ask for you to join us here," (emphasis added). (*See* Ex. A attached to Supplemental Affidavit of Harold Pierce). Defendants breached their employment agreements when they shared the proprietary and confidential information contained in Morgan Stanley's customer lists with AGE and followed up with solicitation letters and telephone calls.

---

[1] Three of the five orders presented by the Defendants do not have any discussion about the facts of the case at issue and are entirely irrelevant.

In a lengthy and effort to draw the court's attention away from their admission to misappropriating Morgan Stanley's customer lists, Defendants deny taking "any files, financial data, electronic data, *information*, documents or other materials" from Morgan Stanley's offices on "May 25, 2006." ((Emphasis added); (Defendants' Opposition, p. 8.)  That date is insignificant; Defendants admit they "retained information from their former jobs" by maintaining a database comprised of Morgan Stanley customer information on Pam Parker's home computer. (See Defendants' Opposition, p. 19.)  Defendants do not dispute, because it is obvious, that they provided AGE with confidential contact information of Morgan Stanley's clients.  There is no other way that the Defendants, with the help of AGE, could have sent solicitation letters, with transfer forms, to Morgan Stanley's clients, the first business day of their new employment at AGE.

Defendants' argument that, with the encouragement of management, maintaining Morgan Stanley customer information on their home computers somehow alleviates their contractual obligations to keep that information confidential, or that the information they took no longer constitutes a trade secret, is ridiculous. At the time Pam Parker obtained the Morgan Stanley client information she was an employee of Morgan Stanley, subject to confidentiality restrictions.  It was understood that Ms. Parker would use that confidential information in the course of her employment with Morgan Stanley and was in no way a "green light" to steal that confidential information and provide it to a competitor.  Likewise, the Defendants who benefited from the use of that database were also employees of Morgan Stanley subject to the relevant provisions of the employment agreements. Indeed, the employment agreements are clear that the information remained protected even though maintained in a personal computer. Moreover, the information remains a trade secret under the Uniform Trade Secrets Act as enacted in Alaska ("UTSA"). Alaska Stat. 45.50.910 *et seq*. Morgan Stanley takes substantial efforts to keep its client information confidential. Morgan Stanley does not permit third parties, especially competitors like AGE, access to its customer data.[2]

---

[2] Defendants argue that because they purchased the software that houses the contact information of Morgan Stanley clients that they were entitled to retain the confidential information. Nothing could be further from the truth. The Defendants are entitled to keep the software, but the <u>information</u> on the software is clearly subject to the confidentiality provisions of the Employment Agreements and the Trade Secrets Act.

JONES & COLVER, LLC
Attorneys at Law
1900 West Benson Boulevard, Suite 201, Anchorage, Alaska 99517
Telephone (907) 272-6511

Second, Defendants are causing irreparable harm to Morgan Stanley by sharing otherwise confidential client information with AGE and its employees. One of Morgan Stanley's clients has already expressed concern about that the fact that his contact information has been shared with a third party without his permission. (*See* Haymans Affidavit, ¶ 4). Defendants' only response to this breach of confidentiality was to request that it be stricken from the record as hearsay. (Defendants' Opposition, p. 6.) That request is contrary to their own position that "Client's Rights Are Paramount." (Defendants' Opposition, p. 20.) Clients trust Morgan Stanley to keep their information confidential and Morgan Stanley has an obligation to do so. If Defendants are permitted to continue their conduct, each client's sensitive financial information would lose the confidentiality guaranteed by Morgan Stanley to its customers, thereby causing customers to lose their trust and confidence in Morgan Stanley.

Third, immediate injunctive relief also is necessary to protect Morgan Stanley's Anchorage, Alaska office and to discourage competitor firms, such as AGE, from inducing Morgan Stanley's employees to breach their plainly reasonable contractual commitments.[3] Defendants' Opposition fails to respond this concern.

Finally, Morgan Stanley lacks an adequate remedy at law. Absent injunctive relief, it will be impossible to even remotely determine Morgan Stanley's damages with any reasonable degree of certainty. Contrary to Defendants' assertions that damages are "easily" calculable, absent injunctive relief it is impossible to determine at this time the number of Morgan Stanley clients who will be "pirated away" by the Defendants, nor is it possible to determine with any degree of certainty the commissions that each of these Morgan Stanley clients will generate not only this year, but 5, 10 or 20 years into the future. "The injury here is such that damages could not adequately compensate. Were [Defendants] permitted by the law to exploit the clientele of their former employers, every investment that reasonable flowed from the exploitation should be included in the damages award. *How such a figure could be arrived at escapes us*." Merrill Lynch v. Stidham, 658 F.2d 1098 (5th Cir. 1981), (emphasis added).

---

[3] Defendants admit that Alaska law recognizes the enforceability of restrictive covenants (Defendants' Opposition, p. 20, *citing* Metcalf Investments inc. v. Garrison, 919 P.2d 1356 (Alaska 1996)).

Accordingly, the Defendants' breach of their post-termination covenants involve financial loss to Morgan Stanley which is incapable of measurement, requiring the issuance of an injunction to protect Morgan Stanley from irreparable harm.

      **c.  Injunctive relief would restore the parties to the status quo as it existed prior to Defendants wrongful conduct.**

Ordering the Defendants to stop illegal solicitation efforts would send a message to the Defendants and others similarly situated that they cannot violate employment contracts with impunity and at the same time enjoy the fruits of their willful solicitations. To allow and encourage a broker to fully and pre-emptively breach his legal obligations before Morgan Stanley can seek relief in Court, and then to allow him to continue to profit by his own opportunistic wrongdoing, would be a terrible promotion of deliberate pre-planned and cynical breaches of legal obligations.

Defendants' do not dispute the existence of their contractual obligations. Their primary argument is that injunctive relief would somehow cheat investors out of a relationship with a financial advisor of their choosing. Nothing could be further from the truth. Upon request, Morgan Stanley is processing account transfers and providing the Defendants' Morgan Stanley customers with Defendants' contact information at AGE. (See Second Supplemental Pierce Affidavit.) Defendants' allegation that Morgan Stanley is "instructing its advisors and employees to mislead clients" is unfounded. (Pierce Affidavit).

Defendants cite to the Affidavit of Timothy A. Lovely, alleging that a Morgan Stanley receptionist refused to provide the whereabouts of Defendant O'Reilly's whereabouts. To the contrary, had Mr. Lovely accepted the receptionist's offer to transfer him to a Morgan Stanley Financial Advisor, he would have received the information he requested. (Pierce Affidavit.) Morgan Stanley has instructed its receptionists in the Anchorage, Alaska branch to forward similar calls to Morgan Stanley Financial Advisors in order to ensure compliance with the transfer process, provide the Defendants' contact information at AGE, and to encourage the existing relationship between the client and Morgan Stanley. (Pierce Affidavit.) Likewise, Morgan Stanley is processing all transfer requests in the normal course of business and Defendants' arguments that Morgan Stanley is not "playing fair" is baseless. It is the Defendants, who resigned right

before a holiday weekend, immediately sent solicitation letters to Morgan Stanley's Clients and followed up with calls soliciting business from Morgan Stanley's Clients who are not "playing fair."

        d. **Greater Injury Will Result From Denial of the Injunction Than From Its Being Granted.**

The benefit of injunctive relief to Morgan Stanley far outweighs any detriment to the Defendants. On the one hand, an injunction would protect Morgan Stanley's goodwill, business reputation, investment in the development of its customer list and responsible public outreach, and its plainly reasonable contract rights. Most importantly, however, an injunction would promote the public interest by protecting Morgan Stanley's highly sought client list, the confidentiality of Morgan Stanley's clients' records, and the enforcement of reasonable contractual restrictions to protect legitimate business interests.

The Defendants, by contrast, have intentionally breached their contractual commitments and have deliberately misappropriated Morgan Stanley's property. In this case, Morgan Stanley seeks only to require the Defendants to honor the terms of the employment agreements they freely executed, to prevent the unfair advantage taken by Defendants and their new employers of Morgan Stanley property, and to enjoin Defendants' "piracy" of Morgan Stanley's most precious business asset -- its clients.

It should be emphasized that Morgan Stanley seeks not to prevent any of the Defendants from earning a living as a "stockbroker," even though doing so will be with a "rival" area company. The Defendants will not be enjoined from pursuing their livelihoods as financial advisors as they will all be free to seek new customers or to service existing customers of AGE. Rather, Morgan Stanley seeks only to enjoin the Defendants from doing so by stealing Morgan Stanley customers, a condition to which each of them specifically agreed.

Defendants attempt to dodge their contractual obligations by reasoning that because Morgan Stanley is large, it can "survive the departure of some of its clients in its Anchorage offices if a TRO is not issued." (Defendants' Opposition, p. 22.)[4] That statement confirms Defendants' intentions that absent injunctive relief it will continue to utilize Morgan Stanley's confidential and proprietary information to solicit Morgan Stanley customers in contravention of their employment agreements. Whether Morgan

---

[4] Interestingly, Defendants contradict themselves and also argue that they resigned from Morgan Stanley without notice because Morgan Stanley is downsizing.

Stanley is large does not diminish the irreparable harm that will be caused in the absence of temporary restraining order. Likewise, Defendants' philosophical differences are not relevant to this determination. (Defendants' Opposition, p. 12.) There is sufficient evidence that Defendants breached their employment Agreements and the Court should enter a temporary restraining order to maintain the status quo pending a hearing before a NASD panel of arbitrators.

IV.  **CONCLUSION**

In sum, the evidence supports Morgan Stanley's motion for a TRO and Morgan Stanley is entitled to injunctive relief both to enforce the terms of its employment contracts and to protect against the conversion and misappropriation of its confidential and proprietary customer list and information. Therefore, Morgan Stanley asks the Court for a temporary restraining order to preserve the status quo pending the outcome of arbitration.

**Dated this 14th day of June, 2006.**

By:  s/Calvin R. Jones
     Jones & Colver
     1900 W Benson Blvd Ste 201
     Anchorage, AK 99517
     (907) 272-6511 Phone
     (907) 276-6511 Fax
     pj@jonescolver.com
         ABA# 7610109

*Attorney for Plaintiff Morgan Stanley*